## JONAS A. PETTIT vs. GREAT NORTHERN RY. CO.

Argued June 28, 1894. Reversed July 10, 1894.

No. 8758.

**Evidence considered.**

> *Held*, that the evidence was not sufficient to bring the case within the rule that a railway company will be liable if, after discovering that a trespasser or volunteer on its road or cars has placed himself in a place of danger, its servants fail to exercise reasonable care to avert the danger.

**Verdict not justified by the evidence.**

> Also that the verdict was not justified by the evidence.
> Canty, J., dissenting.

Appeal by defendant, the Great Northern Railway Company, from a judgment of the District Court of Wright County, *Robert D. Russell*, J., entered February 5, 1894, against it for $4,794.64.

At Smith Lake on October 2, 1893, Frank Pettit, fifteen years old, son of plaintiff Jonas A. Pettit, was standing on a flat car of the defendant under the circumstances stated in the opinion. When the front part of the train backed down against the rear part to couple on to it the shock caused Frank to fall off between the cars. His right arm was crushed and afterwards amputated. This action was brought by the father for the benefit of his son, under 1878 G. S. ch. 66, § 34, against the Railway Company to recover damages to the son caused by its alleged negligence in not exercising reasonable care to avert the injury after seeing the boy in danger. The father also brought an action to recover for the loss of his son's services and for care and expenses occasioned to him by the accident. The plaintiff had a verdict in the first action for $4,700 and in the latter for $300. Judgment having been entered on the larger verdict defendant appeals.

*W. E. Dodge*, for appellant.

*F. E. Latham, J. T. Alley*, and *J. C. Tarbox*, for respondent.

MITCHELL, J. These actions were brought to recover damages for personal injuries to plaintiff's son, caused by the alleged negligence of the defendant,—one action for the benefit of the son, and the

other for the benefit of the plaintiff himself for loss of services, etc. The only question is whether the verdicts in favor of the plaintiff were justified by the evidence.

Stripped of all immaterial matter, the short facts are that the boy was at the station of Smith Lake, when a freight train arrived, consisting of some thirty or more cars,—all box cars, except a few flat cars at the rear. Ascertaining that some of the flat cars were to be switched in and left on a side track, the boy got on to the second flat car from the rear of the train "for the purpose of having a ride." The train started towards the switch, and had gone only a short distance, when it broke in two within ten or twelve cars from the engine. The head brakeman, who was up near the break, signaled the engineer to stop, which he did, bringing the first part of the train to a standstill from four to six car lengths from rear part of the train. This brakeman, having been provided with a new link, gave the engineer the signal to back, which was obeyed, and when the two parts of the train came together the brakeman made the coupling readily in the usual manner. While the evidence on the point is not very satisfactory, yet we think it was sufficient to justify the jury in finding that the engineer backed at an unusual rate of speed. It was the shock resulting from the two parts of the train coming together which caused the boy to be thrown out over the end of the flat car on which he was standing, thereby receiving the injuries complained of. It is not, and cannot be, questioned but that the boy was a trespasser, or, in view of the fact that the conductor did not order him off the car, at most a bare licensee. Hence the defendant owed the boy no contract duty, and to render it liable it must be made to appear that, after discovering that he was in a position of danger, the servants failed to exercise reasonable care to avert the danger; and that is the rule which plaintiff invokes, and upon which he relies.

It is not pretended, but, on the contrary, was disclaimed on the argument, that the flat car was a place of danger had the engine been backed at the usual and proper rate of speed. Indeed, no such claim could be made without convicting both the boy and his father of contributory negligence, for the boy was fifteen years old, and had considerable familiarity with the movement of trains and the process of switching cars upon the side track. Although he does

not admit it in so many words, yet it is perfectly evident from his testimony that he knew the train had broken in two, and that steps were being taken to recouple it. And after the train broke, and up to the time he was injured, he says he remained standing near the end of the flat car, talking, and having some fun with the two rear brakemen, who were sitting on the ground, a few feet from him; and that he "had his attention on these fellows, making fun and laughing at him; and he was not looking anywhere else, or paying attention to anything else." The plaintiff, who stood near by, knew every fact which the conductor then knew, and yet gave his son no warning. But the contention is that the danger arose from backing the engine at an unusual rate of speed without warning the boy of his danger; and therein it is claimed was the negligence of the defendant. But to charge the defendant with negligence on this ground it is necessary, under the rule already referred to, that it should appear either that those who were controlling the movements of the engine, and hence responsible for the rate of speed, knew that the boy was on the car, or that some other employé of the defendant, knowing both that the engine was backing at an unusual rate of speed and that the boy was on the car, failed to exercise reasonable care to avert the danger, either by causing the speed of the engine to be slackened, or by warning the boy. In other words, in order to charge actionable negligence against any particular employé, it is necessary to fasten upon him knowledge both of the source of danger—to wit, the unusual speed of the engine—and of the fact that the boy was on the car. And right here is where we think the evidence of the plaintiff utterly fails. While undoubtedly the conductor had general control of the train, yet it clearly appears that, in accordance with the usual custom, the engineer and the head brakeman, who discovered the break, had exclusive control of the movements of the engine; and the undisputed evidence is that neither of them had any knowledge that the boy or any one else except members of the train crew was on the cars; and there is not a particle of evidence that the two rear brakemen, who were sitting and chatting with the boy, had any knowledge whatever of the speed of the engine, or were paying any attention to it, or that it was their duty to do so. The only remaining employé of the defendant that is claimed to have been negligent was the conductor, and

it was upon the question of his negligence that the court below seems to have submitted the case to the jury.

The conductor was standing on the flat car immediately in front of that on which the boy stood, but when the train broke in two he alighted, and started forward towards the front of the train. He cannot be charged with negligence in not warning the boy at that time, for he did not know, and could not reasonably have anticipated, what, according to plaintiff's own theory, was the sole source of danger, viz. the unusual speed of the engine. Had the boy been a mere child, without any natural guardian present, reasonable care might well have required him to order him off the car, as being under any circumstances a place of danger for a child. But the boy was no child. He and his father both understood the situation as well as the conductor then did, and were as competent to care for themselves as he was to do it for them. To require of the conductor at that time to order the boy off the car, or to warn him of danger, would be to require of him a degree of care for the boy which neither the boy exercised for himself nor his father for him. Indeed, we do not understand plaintiff's counsel to claim that the conductor was negligent in that regard at that time.

It does not appear how far forward the conductor had gotten, or just where he was, when the accident occurred. But it does appear that he was not where either the head brakeman or the engineer was, or that he had anything to do with their movements. And there is not a particle of evidence that he knew of the unusual speed at which the engine is shown to have been backing, or, if he had, that he was so situated that he could have either prevented it, or warned the boy.

The trouble with plaintiff's case is that it appears that those who controlled the movements of the train did not know that the boy was on the car; while it does not appear that those who knew the boy was on the car knew of the speed at which the engine was backing, or, if they did, that they were in a position to avert the danger, either by checking the speed or warning the boy. It seems to us that to hold the defendant liable on this evidence would make railways either active guardians, or even insurers of the safety, of every trespasser on their road or cars.

Judgment reversed.

CANTY, J. (dissenting). I cannot agree to the foregoing opinion. It seems to me that there is sufficient evidence to warrant the jury in finding that Frank Pettit did not know that the train had broken in two until he received the shock which threw him between the cars. He testified on cross-examination:

"Q. Did your father say anything to you about the train breaking in two? A. No, sir; they didn't anybody. These brakemen were quarreling about who should take the link down. * * * Walter he jumped off and took the link down where they broke in two. Q. Didn't say what they were going to take it down for? A. No, sir. Q. Did they tell Walter where to take it? A. No, sir. Q. As far as you know, where did Walter take it? A. He didn't know where to take it. He might have went and thrown it in the lake for all I know. Q. How many cars were there between the place where you were standing and the place where the break was,—the break in two? A. I don't know, there were somewhere about 8 or 9 cars. Q. How do you know? A. Well, I guess at it. Q. How do you know that they were broke in two? A. They must have broke in two to come back with such force. Q. Do you know of your own knowledge that they broke in two? A. No, sir; not exactly."

This is substantially all the evidence in the case as to his knowledge that the train had broken in two. From the fact that there were box cars ahead of the flat car on which he stood, and between him and the break in the train, it is reasonable to suppose that he could not see that the train had broken in two.

Shortly after the break, the conductor, who stood on the next car to Frank, went forward beside the train. The head brakeman and engineer both testify that when they were making the coupling after the break the conductor was standing on the ground on the right-hand side towards the rear of the train. The evidence tended to prove that considerable time elapsed between the time of the break and the recoupling. Frank further testified on cross-examination:

"Q. How long did he [the conductor] remain on the car after the train stopped? A. Just a minute, and then jumped off. Q. How long was it, after he walked down the track, that the two men began to quarrel about the link? A. Just a little while. Q. How

long after Walter disappeared with the link that you were thrown off? A. Five or ten minutes."

This evidence is uncontradicted. It seems that Walter went back to the caboose, got the link, and carried it forward to the place of the break. What was the conductor doing during all of this time? He was present at the trial, but was not questioned on this point. It is reasonable to suppose he was looking to see that proper steps were being taken to bring the parts of the train together again, and recouple them. It affirmatively appears that he could see the front part of the train, because the engineer and head brakeman testify that they saw him. He had reason to believe that the boy did not know that the train was broken in two, and that for this reason the position of the boy was a dangerous one, even if the recoupling was made with such care as to cause only a slight shock to the car on which he stood. The conductor had charge of the train. It seems to me that the jury were warranted in finding that he had ample time and opportunity to observe, and must have observed, what was being done, and had ample opportunity to warn the boy or the engineer or both of the boy's danger, and that he was negligent in failing to do so.

It seems to me that the father's negligence cannot be imputed to the boy. In this court and the court below it has been assumed that the boy was *sui juris*. If he is charged with the duty of caring for himself as an adult, he should not be put in a worse position than an adult by being charged with his father's negligence as well as his own.

I think that the judgment appealed from should be affirmed.

BUCK, J., absent, sick, took no part.

{Opinion published 59 N. W. 1082.)