JONAS A. PETTIT v. GREAT NORTHERN RAILWAY COMPANY.[1]

Nov. 25, 1895.

Nos. 9504—(68).

**Verdict Sustained.**

Evidence considered, and *held* that it is sufficient to sustain the verdict.

**Trespasser on Train—Duty of Conductor and Brakeman.**

Certain instructions of the trial court as to the duty of the conductor and brakeman of a freight train to a trespasser or licensee on one of the cars of their train, after discovering him in a place of danger, considered, and *held* to be correct.

Action in the district court for Wright county. The case was tried before Jamison, J., and a jury, which rendered a verdict in favor of plaintiff for $4,000. From a judgment entered pursuant to the verdict defendant appealed. Affirmed.

*W. E. Dodge,* for appellant.

*F. E. Latham, James C. Tarbox* and *John T. Alley,* for respondent.

[1] Reported in 64 N. W. 1010.

START, C. J.[2]    Action brought for the benefit of the plaintiff's minor son, to recover damages for personal injuries to the son, alleged to have been caused by the negligence of the defendant.    Verdict and judgment for the plaintiff, from which the defendant appealed.

A former appeal in this case was heard in this court, resulting in a reversal of a judgment in favor of the plaintiff, and the granting of a new trial, on the ground that the evidence did not justify the verdict (58 Minn. 120, 59 N. W. 1082), to which reference is here made for a concise statement of the facts of the case.

The former appeal settled certain propositions of fact and law, which must be accepted as controlling on this appeal, as the evidence on the second trial in no manner modifies them.    They are, briefly stated, that the position of the injured boy on the flat car was not a dangerous one if the engine had been backed at the usual rate of speed, but that the evidence was sufficient to sustain a finding that it was backed at an unusual rate of speed; that the boy was a trespasser, or, at most, a mere licensee, to whom the defendant owed no contract duty, nor any duty, until after discovering that he was in a position of danger, and that, to render it liable, it must be made to appear that, after discovering him in a position of danger, its servants failed to use reasonable care to avert the danger; that the danger to the boy arose from backing, at an unusual rate of speed, the engine, with the head section of the train, which had broken in two, down to the rear section, of which the flat car on which the boy was standing was a part, without warning him of his danger; that, to charge the defendant with negligence, it was necessary to show that those who were conducting the movements of the engine, or some other employé of the defendant, knowing both that the engine was coming down at an unusual rate of speed and that the boy was on the car, failed to exercise reasonable care to avert the danger, by causing the speed of the engine to be slackened, or by warning him of his danger; that neither the engineer nor the head brakeman, who were in the direct control of the train, had any knowledge that the boy was on the car; that, while the conductor and rear brakeman knew that the boy was on the car, yet the evidence on the former trial did not show that any one of them knew

that the engine was backing down at an unusual rate of speed.  It is, however, claimed by the plaintiff that additional evidence was given on the second trial as to the knowledge of the conductor and one of the rear brakemen of the speed of the engine, and that the evidence is sufficient to sustain a finding that each knew that it was backing down at an unusual rate of speed.

1. The first question, then, is, did the conductor know that the boy was on the car, and also that the engine was coming back at an unusual rate of speed?

The burden was on the plaintiff to establish prima facie the proposition that he did, but the plaintiff was not bound to do so by direct evidence, for if, from all the evidence as to the position of the conductor at the time of the accident, he must have known, in the discharge of his ordinary duties as conductor, the rate of speed of the engine, and that the position of the boy was one of peril, a prima facie case is made out. That he knew the boy was on the flat car cannot be questioned, for, when the train broke in two, he was on the flat car next to the one the boy was on, and then alighted, and started forward towards the head of the train. For what purpose he went forward towards the head of the rear section of the train, if it was not to see that the recoupling was promptly and properly made, the evidence does not disclose; for, although he was present at the trial, he was not called to explain where he went and what he did after the break occurred,—a fact peculiarly within his own knowledge. It must, however, be conceded, as was held on the former appeal, that this evidence alone is not sufficient to establish the fact that he did go to, or to a point sufficiently near, the head of the rear section, where he could and must have observed the speed of the train. But we are of the opinion that on the second trial there was additional evidence on this point, which, taken in connection with the evidence to which we have referred, is sufficient to sustain a finding that the conductor must have known both the boy's position and the rate of speed at which the engine was coming back.

The witness Fashon gave evidence tending to show that when the head brakeman was standing near the point where the coupling was to be made, and giving the signals for the head section of the train to come back, the conductor stood about a rod from him, and at a point where he could see the engine. The evidence of this witness is un-

satisfactory and contradictory. The first time he was called as a witness, he located the conductor near the flat car where the boy was standing. He was recalled the next morning, and gave evidence tending to locate the conductor as we have indicated, and admitted that he lied in his previous testimony, but explained that he was drunk when he gave it. The witness is, however, corroborated in a measure as to his last statement by a witness whose evidence there seems to be no reason to doubt. We refer to John Malley. The weight to be given to the evidence of Fashon was a question resting very largely with the jury and the trial court, who saw him, heard his testimony, and had an opportunity to judge, from his appearance upon the stand, whether or not his first statement was given when he did not know what he was saying.

2. The trial court submitted to the jury the question of the knowledge of the rear brakeman, Ralph Painter, as to the speed of the engine and the boy's position. It is necessary to refer only to the former, for it is manifest that he knew the boy's position. This brakeman was called by the plaintiff, and testified on this point as follows:

"Q. Now, from where you stood on the south-side track down to where this train broke in two, which way does the track curve, if at all?

"A. Well, there is a slight curve towards the south.

"Q. Towards the direction you were in?

"A. Yes, sir.

"Q. Did you see the head section of this train when it broke in two?

"A. I noticed it when it broke in two; yes, sir.

"Q. How far down the track did it run?

"A. I couldn't say exactly; not over four car lengths, as near as I can tell.

"Q. Did you see the head section of this train when it was coming back?

"A. I wasn't watching it particular; no.

"Q. I say, did you see it?

"A. I couldn't say as I did see it; no.

"Q. You say that the track curves toward you?

"A. Yes, sir.

"Q. And there was nothing on the south side of the track?

"A. No.

"Q. Was there anything to obstruct your view of this train?

"A. No, sir."

At the close of his examination in chief, he further testified as follows:

"Q. At what rate of speed do you think that train was coming back, that head section, that day?

"A. I couldn't say exactly; it couldn't have been coming very fast.

"Q. About what rate of speed do you think it was coming?

"A. Not over two or three miles an hour.

"Q. You will swear to that, will you?

"A. Yes, sir."

It necessarily follows from this evidence that this witness saw the head section of the train when it came back, and knew its rate of speed; otherwise, he could not swear that the rate was not over two or three miles an hour. In view of the manner in which he answered the questions of plaintiff's counsel, we are of the opinion that this evidence is sufficient to sustain a finding by the jury that if, in fact, the engine came back at an unusual rate of speed, he must have known it.

3. The question of contributory negligence was one for the jury. The boy testifies that he did not know that the train had broken in two. There were a number of box cars between the car he was on and the front end of the rear section of the train where the break occurred, and it was a question for the jury to say whether or not, under all the circumstances, as disclosed by the evidence, he must have known of the break, and was negligent in remaining on the car. Again, if he did know of the break, it would not be conclusive evidence of his negligence, for it is conceded that his position was not one of danger if the coupling was made in the usual way. He was not bound to assume that it would be made in an unusual manner.

4. This brings us to the exceptions to the instructions of the court which are assigned as error.

It is not necessary to discuss or decide as to the correctness of the general instructions to the effect that the jury should inquire whether or not the employés of the defendant discovered the boy in a place of danger, and failed to use reasonable care to avert such danger, for the court immediately followed this general statement with a limitation of the inquiry to the conductor and the rear brakeman, Painter. The jury were expressly told that the engineer and head brakeman

were not negligent, and then the court said: "You will next consider whether or not the two brakemen, Powers and Painter, who were at the rear end of the train, were negligent." But this was followed by a specific instruction as to Painter's negligence alone, in these words: "I instruct you that if the brakeman Painter knew that the boy was standing upon this car in the position indicated by the evidence, and he also knew that the front section of the train was coming back at an unusual rate of speed, and that the boy was thereby subjected to imminent danger, that it was the duty of Painter to inform the boy; and, if he failed to do so, then he was guilty of negligence, and his negligence would be the negligence of this defendant." The court had previously instructed the jury that the measure of the duty of defendant's servants in the premises was reasonable care. No further reference is made to Powers, and from the whole charge in this connection there is no reason for claiming that the court submitted to the jury the question of the negligence of both Powers and Painter. As to the latter, there was evidence in the case justifying the submission of the question of his negligence to the jury; but the counsel for the defendant claims that it was error to submit the question of the negligence of this brakeman to the jury, because he had no control of the movements of the train. But the question of the negligence of the brakeman submitted to the jury had no reference to his failure to signal the engineer, or to cause the speed of the train to be slackened, for it was expressly limited to his duty to warn the boy in case he discovered him in a position of imminent peril. If the court had charged the jury that it was the duty of the brakeman to signal the engineer in case he discovered the peril of the boy, then a question as to the correctness of the instruction would be presented. The instructions as to this particular brakeman were correct.

As to the duty of the conductor, the court charged that "if the conductor knew that the boy was standing upon this flat car, and he also knew the front section of the train was coming back at an unusual rate of speed, and that the boy was thereby subjected to unusual danger, and the conductor at that time was in such a position, and had the authority and right and power to check the speed of the engine, either through signal or otherwise, and he failed to do it, then he would be guilty of negligence." This is alleged to be error, because the "engineer and head brakeman had exclusive control of the move-

ments of the engine." It is true that they were controlling the move-ments of the engine, but the engineer testified that, as to the move-ments of the train backward and forward, the conductor was fully in control. This was sufficient to justify the court in submitting to the jury the question of his power, authority, and right to check the speed of the train. It was only in case that he had this power and author-ity that it was his duty to check the speed of the train.

The instructions of the trial court, as a whole, were a clear and correct statement of the law of the case as declared by this court on the former appeal.

Order affirmed.