SWAN F. HJELM v. WESTERN GRANITE CONTRACTING COMPANY.[1]

June 1, 1906.

Nos. 14,847—(89).

**Negligence of Master.**

   Plaintiff was injured by the explosion of a blast in a quarry. The negligence alleged consisted in a premature explosion of the blast without giving plaintiff the customary warning. It is *held* that the evidence did not justify the court in directing a verdict for the defendant, but presented a question of fact to be determined by the jury.

Action in the district court for Stearns county to recover $10,113 for personal injuries. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*H. S. Locke* and *Ludvig Arctander,* for appellant.

*Reynolds & Roeser* and *Stewart & Brower,* for respondent.

JAGGARD, J.

This is an action to recover for personal injuries alleged to have been caused by defendant's negligence in negligently and carelessly and prematurely exploding a blast in a stone quarry without giving the plaintiff an opportunity to get a safe distance away from the blast. A new trial was granted by this court upon a former appeal of this case. Hjelm v. Western Granite Contracting Co., 94 Minn. 169, 102 N. W. 384. At the close of the case defendant moved for a directed verdict. The court denied this motion and submitted the case to the jury, which returned a verdict for defendant. From an order denying plaintiff's motion for a new trial, this appeal was taken.

1. On that appeal the sufficiency of the complaint was conceded for the purposes of the appeal. At the present trial, objection was made to the adequacy of the allegations of negligence with respect to a premature explosion of the blast. The plaintiff applied for an amendment which was sufficient to raise the issues which will be afterwards referred to in this opinion. It is not clear upon the record exactly

[1] Reported in 108 N. W. 803.

what ruling the court made with reference to this amendment. In view, however, of the course of trial and the court's own memorandum, we conclude that the pleading was sufficient to raise the issue. There was testimony tending to show that it was customary in that quarry, when firing blasts, to give three or four calls, with a wait in between, for the men to leave the quarry; then to send a man around to warn everybody in the vicinity away; and then, when he (the person giving the warning) had returned to the battery, they would give two or three more calls, with a wait between, and that they would wait a minute or more after the last call was given before firing the blast. It was uncontradicted that this custom was not observed in the present instance. The essence of defendant's alleged negligence was the failure to observe this custom.

2. The ground upon which the court refused a new trial was that it was immaterial whether the court committed errors in trial or not, inasmuch as the court should have granted defendant's motion for a directed verdict. This is the principal question in the case and is not without grave doubt.

The memorandum of the trial court sets forth: "On the question of contributory negligence, Justice Brown, speaking for the supreme court, uses this language: 'The contention is made that defendant was relieved from the consequence of a failure to give the usual warning in this particular instance by the conduct of plaintiff. It is urged in this connection that when plaintiff went to warn away the team approaching the quarry, and after having done so, he called to Freberg (a vice principal, who exploded the blast from the battery) that the team was out of the way, and almost immediately thereafter the blast was exploded. While plaintiff testified that he did call to Freberg that the team was out of the way, he distinctly said that it was the understanding between himself and Freberg that, when he had succeeded in getting the team out of the way, he would return to Freberg, where the blast was to be exploded, and that at the time it was exploded he was running through the brush on his return. If it appeared from the evidence that Freberg heard the call from plaintiff that the team was out of the way, and acted on it in exploding the blast as an indication from plaintiff that he also was in a place of safety, plaintiff cannot recover. His own act would in such case bar his right of action. But

there is no evidence that Freberg heard plaintiff's call, or that he acted on it in exploding the blast. He was not called as a witness at the trial, and in view of the testimony of plaintiff to the effect that it was understood between them that he was to return after warning the team away, it was a fair question for the jury to determine whether Freberg heard the call, and acted on it, in exploding the blast, as an indication from plaintiff that he was in a place of safety. Our conclusion is that upon this feature of the case, the evidence made a case for the consideration of the jury.' At the last trial of this case the defendant supplied the missing testimony suggested by the supreme court in that part of its decision above quoted, by calling Mr. Charles Freberg [the vice principal who discharged the blast from a battery]."

Freberg testified that he had told plaintiff "if the team be far enough away he [the plaintiff] should tell me so, and so he did"; that when he heard plaintiff "holler," he could tell by the sound of plaintiff's voice that plaintiff was about in the same place where the team had been when he sent plaintiff to get the team out of the way; and that in reliance upon plaintiff's "holler" he exploded the blast. This affirmative testimony of Freberg is supplemented by a strong argument of fact, based upon other facts shown. The danger line from the blast was six hundred feet away from the point of its explosion. The team was originally one hundred forty or one hundred fifty feet from the blast. The battery was three hundred feet from the blast. The point at which plaintiff called out was three hundred eighty eight feet from the blast. In other words, as defendant argues, at the time the blast was ready to be fired, the plaintiff went to a point one hundred forty or one hundred fifty feet from the blast to get the team out of the way, and while he was returning went two hundred thirty eight or two hundred forty eight feet away from the blast, and at a distance of five hundred one feet from the battery hallooed to Freberg that the team was out of the way. The testimony, however, does not necessarily show that the plaintiff went this distance of two hundred thirty eight or two hundred forty eight feet away from the blast for the purpose of getting to a safe place, rather than toward the battery for the purpose of informing Freberg that the team was out of the way. While the record is not clear, that testimony seems to be susceptible of the construction that the plaintiff, having taken the team

from the place where it was to a more distant place and then returning toward the battery until he reached a point five hundred one feet from the battery, called out, as he testified, not that everything was all right, but "I got the team to go"—"the team is gone." This, the jury might have found, was not intended as a signal for Freberg to shoot off the blast, but as a compliance with Freberg's request to get the team out of the way, and with his own further statement that he would come back again when he got the team out of the way.

The contrast of plaintiff's version and Freberg's version is presented by plaintiff in parallel columns. It does not appear from this conflicting evidence, in the sense in which the language was used, by this, an appellate court, in its previous opinion, that Freberg exploded the blast in reliance on plaintiff's call as an indication from plaintiff that he was in a place of safety. There was evidence to that effect. There was also evidence inconsistent therewith. If it was the understanding that plaintiff was to return to Freberg after warning the team away, he had no right to act on the signal as an indication that plaintiff was in a place of safety. The inference, therefore, is not made conclusive by Freberg's testimony, nor by the testimony concerning the incident as a whole. Freberg's interpretation of the meaning of plaintiff's shout was not conclusive upon plaintiff, any more than the plaintiff's interpretation of that shout was conclusive upon the defendant. The reasonableness and correctness of either interpretation was for the jury. Accordingly we conclude that the trial court would not have been justified in directing a verdict for the defendant. It is practically conceded in fact, and must be held in law, that the charge of the court contained reversible error, and that a new trial must be granted unless the evidence justified a directed verdict. A new trial must therefore be ordered.

3. The assignments of error raise some other questions which may arise upon a new trial, a brief reference to which may serve to expedite the final adjudication of this controversy. We are at a loss to see why either the plaintiff or defendant should have been allowed to testify as to what was their intent and the meaning of the words used by them, respectively, in connection with the direction by Freberg to the plaintiff to get the team out of the way, or by the shout of the plaintiff in compliance. The testimony should be confined to the words actually

98 M.—15

used and the circumstances surrounding their utterance. The inference from these words and circumstances should be drawn by the jury. The fact that the blast was not covered was a material circumstance and a part of the res gestæ. Evidence to that effect was admissible as tending to show existing conditions, in view of which defendant's duty to give timely warning should have been considered.

The court properly refused to charge the doctrine of avoidable consequences, laid down in Davies v. Mann, 10 Mees. & W. 546, and in similar cases. That doctrine has been repeatedly recognized and is the unquestioned law of this court. Evarts v. St. Paul, M. & M. Ry. Co., 56 Minn. 141, 57 N. W. 459, 22 L. R. A. 663, 45 Am. St. 460; Pettit v. Great Northern Ry. Co., 62 Minn. 530, 64 N. W. 1019. The only question here in that connection is whether or not that rule of law was applicable to the circumstances of this case. We are of the opinion that it was not. The knowledge of Freberg as to plaintiff's actual position and peril was not sufficiently shown, directly or indirectly, to bring this case within the purview of these authorities. The plaintiff did not assume all the risks incident to his work, but only those which were necessary, ordinary, and usual. If the jury believed his version of the occurrence, he did not assume risks arising from negligence in the discharge of defendant's duty, particularly with reference to the nonobservance in this case of the precautions customarily followed. It is also elementary that contributory negligence is an affirmative defense, the burden of proving which rests upon the defendant, and that the conduct on the part of the plaintiff contributing to his damage would not bar his recovery unless such conduct involved a want of due care.

Order reversed.