RALPH HOLDEN v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 10, 1908.

Nos. 15,384—(158).

**Contributory Negligence—Damages.**

The plaintiff's intestate was a passenger on the defendant's passenger train, and was carried past his station under circumstances likely to disturb his judgment, through no fault of the defendant. The conductor told him that the train was in the yards, going slowly, and he could jump off, and directed him so to do. Thereupon he attempted to alight from the moving car and was killed thereby. *Held*, that the question of his contributory negligence was one of fact, and it was rightly submitted to the jury, and, further, that the damages awarded are not excessive.

Action in the district court for Swift county by Ralph Holden, as administrator of the estate of his son Ralph, deceased, to recover $5,000 for the death of the son. The case was tried before Qvale, J., and a jury which returned a verdict in favor of plaintiff for $3,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*James D. Armstrong*, for appellant.

*Geo. W. Champlin* and *F. E. Latham*, for respondent.

START, C. J.

On October 29, 1906, at about one o'clock p. m., the plaintiff's intestate was killed while attempting to alight from defendant's passenger train when it was in motion. This action was brought in the district court of the county of Swift to recover damages for his death, on the ground that it was caused by the negligence of the defendant. Verdict for the plaintiff in the sum of $3,000. The defendant appealed from an order denying its motion for judgment or a new trial. The principal questions raised by the assignments of error are whether the deceased was as a matter of law guilty of contributory negligence, and, further, whether the damages awarded are excessive.

[1] Reported in 114 N. W. 365.

There was but little conflict in the evidence as to what took place just before the deceased started to leave the railway car on which he was a passenger, except that the testimony of the conductor of the train as to what he said to the deceased conflicts in some particulars with that of the plaintiff's witnesses. The credibility of the witnesses and the weight to be given to their testimony were questions for the jury. The question, then, is whether there is any evidence, taking the most favorable view of it fairly permissible for the plaintiff, to establish the essential facts upon which the verdict must rest. There was evidence fairly tending to establish these facts:

The deceased was a farm laborer, twenty three years old, of good ability, health, and eyesight, and accustomed to riding on the cars. On the day of his death he was a passenger on the defendant's train from Morris to Hancock, where he had resided for some months. He was seated in the rear car of the train, directly in front of two young ladies with whom he was acquainted, and entered into conversation with them. Being so engrossed, he took no note of the passing of time or of the passing of Hancock by the train. Shortly after the train left Hancock the conductor came to the deceased, who was then kneeling on the seat in front of the ladies, facing and conversing with them, and asked him for his ticket. He replied, "You have my ticket." The conductor then asked where he was going, and the reply was, "Hancock." The conductor replied, "We are passing out of Hancock." The deceased asked to have the train stopped so that he could get off. The conductor, according to the testimony of the ladies, said, "No; the train is going slow, we are in the yards, you can jump off," but according to the testimony of another witness for the plaintiff, he said to the deceased, "We are right in the yards, get off," and assured him that the train was going slowly. The deceased then bade the young ladies good-bye, remarking that he had missed his station, and walked to the front platform of the car and onto the steps. The conductor followed him, the car gave a slight jolt, and the conductor came back into the car and pulled the bell cord. When the train stopped the deceased was found dead under the rear trucks of the car. Sufficient money was found in his pocket to have paid his fare to the next station. He made no offer to do so. The train was not in the yards, but about a mile

from the station, on a fill some eighteen feet in height, and so narrow that the lower step of the car was about a foot from the edge of the embankment. The car was going ten miles an hour at the time. It was daylight. The deceased did not jump from the platform; for, if he had done so, he would have gone down the embankment and not under the car. In what manner he attempted to leave the car does not clearly appear from the evidence. The conductor testified that he "walked off from the train, through the coach, off on the steps, and got off," and, on the cross-examination, that he was gone when he, the conductor, got to the platform. There were no angry words between the conductor and the deceased, and he had no reason to believe that the conductor would eject him if he did not get off the train.

The clear inference from these facts is that the conductor was guilty of negligence for which the defendant is liable, unless the deceased was guilty of contributory negligence. It was the duty of the conductor to care for the safety of his passengers. He either knew or he did not know whether his train had left the yards or was on the fill. He knew whether his train was running slowly and at a rate of speed which made it safe for a passenger to leave it, or he did not. In either case it was a breach of his duty to represent that the train was in the yards and going slowly, and to advise or direct the deceased to get off.

The question as to the alleged contributory negligence is more serious and doubtful. Does the inference that he was guilty of such negligence conclusively follow, as a matter of law, from the evidentiary facts established by the evidence? The general rule, as settled by the decisions of this and other courts, is that, except when the circumstances are exceptional and peculiar, only one inference can reasonably be drawn from a voluntary attempt by a passenger to alight from a moving railway train, and that it is negligence as a matter of law to do so. Jones v. Chicago, M. & St. P. Ry. Co., 42 Minn. 183, 43 N. W. 1114; Butler v. St. Paul & D. R. Co., 59 Minn. 135, 60 N. W. 1090. To bring a given case within the exception to the rule, it may be shown that the passenger was invited or directed to get off the moving train, or that he acted under apprehension of

impending peril, "or that some direction was given to the passenger by those in charge of the train, or some situation created which interfered to some extent with his free agency and was calculated to divert his attention from the danger and create a confidence that the attempt could be made in safety," or that he acted under other similar circumstances. Jones v. Chicago, M. & St. P. Ry. Co., supra; Butler v. St. Paul & D. R. Co., supra; Solomon v. Manhattan, 103 N. Y. 437, 442, 9 N. E. 430, 57 Am. 760.

A brief reference to a few of the adjudged cases will not be out of place.

In Jones v. Chicago, M. & St. P. Ry. Co., supra, the plaintiff was awakened from a sound sleep and told by the conductor that he was at his place of destination, and, while still drowsy, was directed to get off the train. It was very dark. He thought the train was moving slowly. In fact it was moving eight or ten miles an hour and had passed the station. It was held that plaintiff, under the circumstances, had a right to rely on the actions and conduct of the conductor, and to assume that he knew the circumstances and conditions and would not advise or direct him to jump from the train unless it was safe so to do.

In Bucher v. New York Central, 98 N. Y. 128, the plaintiff had a child in his arms and went out upon the car platform before the train had come to a full stop, and while it was moving very slowly the conductor directed him to get off, and he, believing the cars would stop, did so; but they did not stop, and he was injured. The accident happened at the regular stopping place of the train, but it did not stop. Held, that defendant was liable on the ground that the conductor's conduct was such as to justify the plaintiff in concluding that he had a right to get off the train and that he could safely do as he was directed.

In Galloway v. Rock Island, 87 Iowa, 458, 54 N. W. 447, the plaintiff went upon a vestibuled train at night to assist his wife and child aboard. The door was locked when he went to get off. The brakeman said he could not get off; that it would break his neck. The plaintiff said he would pay his fare and go to the next station. The brakeman then opened the door and told the plaintiff he could jump

far enough and would be all right. The plaintiff asked the brakeman to pull the bell. He either said he could not or would not, and further said, "You get off," and left plaintiff in the dark. The plaintiff did not know whether the train had more than left the station, and it seemed not to be going fast. He jumped from the train and was injured. The train in fact was going about twenty miles an hour. Held, not error to submit questions of contributory negligence and whether the brakeman was in charge of the car to the jury.

In Georgia v. McCurdy, 45 Ga. 288, 12 Am. 577, a passenger was carried beyond the stopping point. The train did not come to a stop at that place, but slackened speed, and the plaintiff went to the conductor to get him to stop the train. The plaintiff was a heavy man and was afraid to alight while the train was moving. The train slackened speed for him to get off. Under directions of the conductor, he got off and was injured. The defendant was held liable.

In Louisville v. Crunk, 119 Ind. 542, 21 N. E. 31, 12 Am. St. 443, the plaintiff boarded a train to assist a sick person to a seat. The defendant knew this, but started the train before the plaintiff was off. The speed of the train was four and one half miles an hour when he alighted. Held, that it was not negligence per se to leave the moving train.

In South & North Alabama v. Schaufler, 75 Ala. 136, the plaintiff stepped from a train, on a dark night, when it was moving at the rate of six or eight miles an hour, and before it had reached the platform of the regular station. The plaintiff had no reason to believe that the train would not stop at the usual place, with which he was acquainted. The conductor had said to him, "Hurry up! We have no time." Held, that advice on the part of the conductor cannot be held to excuse an act of negligence on the part of an adult passenger which would be so opposed to common prudence as to make it an obvious act of recklessness. If the danger was not apparent to a person of reasonable prudence, and the passenger acts under such advice, it becomes a question for the jury to say how far the passenger's negligence may be excused.

Now, in the case at bar the jury might have reasonably inferred, from the evidentiary facts which the evidence tended to establish,

that the deceased was embarrassed and his judgment somewhat disturbed when he found that he had been carried by his station under the circumstances stated; that he relied, and had a right to rely, upon the representations of the conductor that the train was in the yards, going slowly, and that he could jump off, an assurance that he could safely do so, and to act upon the conductor's advice and direction to get off the train, until he was advised, by the use of his senses, to the contrary; that the situation was such that he was required to act quickly and hasten to get off; and, further, that it was not until he was on the steps of the car that he knew and appreciated that the conductor had misled him, when it was too late to save himself and he fell or was thrown from the step by a jolt of the car or its increasing speed. The evidence indicates with reasonable certainty that he did not step or jump from the car; for, if he had done so, it would be reasonable to infer that he would have fallen down the embankment. While this is a border case, yet we are of the opinion that fairminded men might draw different conclusions from the evidence. We hold that the evidence does not show, as a matter of law, that the plaintiff's intestate was guilty of contributory negligence, that the question was properly submitted to the jury, and that the verdict is sustained by the evidence.

The deceased was a young, unmarried man, twenty three years old, of good habits, and sound of body and mind, and left, him surviving, a father and mother of the age of sixty four and fifty nine years respectively, with whom he shared a part of his earnings. The damages awarded are liberal, but in our opinion not excessive.

Order affirmed.