## JOHN STREET v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

February 13, 1914.

Nos. 18,245—(87).

**Passenger — duty of carrier to companion.**
1. One entering a railway train for the purpose of assisting an outgoing

[1] Reported in 145 N. W. 746.

---

Note.—The question of the carrier's duty to one assisting passenger on train is discussed in notes in 21 L.R.A. 354; 3 L.R.A.(N.S.) 432; 22 L.R.A.(N.S.) 910; 28 L.R.A.(N.S.) 773; and 46 L.R.A.(N.S.) 357.

passenger, but himself not intending to take passage, is neither a passenger nor trespasser; and the extent of the company's duty, when without notice of his presence, is, in the absence of statute, to exercise ordinary care not to injure him while there or when attempting to alight, which does not include any duty to hold the train to enable him to alight safely.

**Statutory stop of passenger train.**

2. Such a person, however, is within the protection of G. S. 1913, § 4399, requiring passenger trains to stop "a sufficient time, not less than one minute, to safely discharge and receive passengers."

**Statute inapplicable.**

3. Nor is he within the inhibition of G. S. 1913, § 9010, making it unlawful "for any person other than a passenger or employee to get on or off, or attempt to get on or off  *  *  *  any engine or car" while in motion.

**Questions for the jury.**

4. Whether defendant violated the duty prescribed by section 4399, and whether plaintiff was guilty of contributory negligence in attempting to alight from the train while it was in motion, *held*, under the evidence, questions for the jury.

Action in the district court for Goodhue county to recover $3,000 for personal injuries. The amended complaint, among other matters, alleged that defendant and its servants negligently failed to warn plaintiff that it would not be safe for him to enter the car to assist his sister or to warn him that it was not safe for him to attempt to alight from the car after it was started, but on the contrary represented that it was safe and proper for him to do so and that he would have sufficient time to do so and alight from the car before it would start to leave the station, in accordance with law and the usual custom of defendant company in the operation of its passenger trains. The answer admitted that plaintiff's sister became a

---

As to the carrier's duty to see that passenger has alighted before starting train at station, see note in 25 L.R.A.(N.S.) 217. And upon the presumption of negligence from sudden starting of car while passenger is alighting, see notes in 13 L.R.A.(N.S.) 611 and 29 L.R.A.(N.S.) 814. And for the time allowed passenger to alight, see note in 4 L.R.A.(N.S.) 140.

The authorities on the question of the negligence of a passenger in getting on or off moving train are reviewed in notes in 21 L.R.A. 354 and 22 L.R.A. (N.S.) 741. And on the question of the construction and effect of a statute making it an offense to get on a moving car or train, see note in 23 L.R.A.(N.S.) 513.

passenger upon one of defendant's trains; that plaintiff accompanied her upon the train, but not for the purpose of becoming a passenger; that he stayed upon the train until it had left the station and that in alighting from the train while it was in motion he sustained some personal injury and denied the other allegations of the complaint, and alleged that the injury was the result of plaintiff's want of due care. The reply expressly denied that plaintiff remained upon the passenger train until it had left the station, and alleged that when he alighted the train was still at the station, being at the platform or pavement maintained by the company for the discharge and reception of passengers and about opposite the north end of the station building, and denied that his injury was caused by any lack of care on his part. The case was tried before Johnson, J., who when plaintiff rested granted defendant's motion to dismiss the action. From the order denying plaintiff's motion for a new trial, he appealed. Re-versed.

C. P. Carpenter, for appellant.

F. W. Root, Nelson J. Wilcox and F. M. Wilson, for respondent.

PHILIP E. BROWN, J.

Plaintiff's action to recover damages for personal injuries was dismissed at the close of his evidence, and this is an appeal from an order denying his motion for a new trial.

Plaintiff entered defendant's passenger train at a station in this state, for the purpose of assisting a lady passenger, himself, however, not intending to take passage, but to leave the car as soon as his errand thereon was accomplished. Entering the front end of the car, they proceeded to a seat near the middle, when, observing the train was in motion, he hastily passed to the rear vestibule, intending to alight, but finding this closed hurried back through the car to the front end, attempted to alight, fell and was injured.

1. Plaintiff was neither a passenger nor trespasser. One entering a car for the purpose of assisting an outgoing passenger, while there so engaged, is under implied invitation from the company; the extent of its duty, if without notice of his presence, being, in the absence of statute, to exercise ordinary care not to injure him while

there or when attempting to alight. The train crew were without notice of plaintiff's presence on the train; hence defendant owed him no common-law duty to hold the train either a sufficient or reasonable time to enable him to alight safely.

Plaintiff's case, however, is not grounded on common-law negligence, but depends upon defendant's failure to comply with the statutory duty—which under the evidence was for the jury—to stop "a sufficient time, not less than one minute, to safely discharge and receive passengers," prescribed by G. S. 1913, § 4399; while defendant's contention, adopted by the trial court, is that plaintiff's right of recovery, if otherwise sustainable, is defeated by section 9010, which reads as follows:

"It shall be unlawful for any person other than a passenger or employee to get on or off, or attempt to get on or off, or to swing on, or hang on from the outside of, any engine or car or any electric motor or street car upon any railway or track, while such engine, car, motor, or street car is in motion, or switching or being switched. Every person who shall violate any of the foregoing provisions shall be punished by a fine of not more than ten dollars, and any sheriff, constable, or police officer finding any person in the act of violating any such provision shall arrest, take before a proper court or magistrate, and make a verified complaint against him for such violation."

It may be conceded that, if plaintiff is without the former statute or the exception of the latter, he cannot recover; (for defendant's duty, if any, lay in the first, and the second would constitute a bar under the doctrine that where one's violation of law contributes directly and proximately to his injury he is remediless). The question, then, turns upon the inclusiveness of the term "passengers," employed in both sections, as indicative of their scope and intended operation. The ordinary rules governing construction of civil statutes should be applied to the first, while the second, being penal, must be strictly construed. We think it clear that plaintiff was within the protection of the provision first quoted. It would violate ordinary rules of construction and be an unwarrantable assumption of legislative intent to hold—especially in view of the universal practice of persons assisting passengers in boarding trains, acquiesced in

by carriers and for their benefit—that one not technically a passenger could not found a claim of negligence upon violation of this statute. On the other hand, under the established rule of construction, it is equally clear that the legislature did not intend thus to restrict the exception of the latter section. The evident purpose was to prohibit trespasses upon engines and cars while in motion, a dangerous practice annoying to the companies, indulged in particularly in towns and villages. Were the purpose protection of persons lawfully on trains, passengers as well as others undoubtedly would have been included in the prohibition; for the same likelihood of injury exists as to both. We do not question the power of the legislature to exempt passengers from the inhibition of the statute; but the construction given must be reasonable and practical, and the intent should control though contrary to the letter, thus preventing absurd and unjust results, to be avoided unless the language used will reasonably bear no other interpretation. 3 Dunnell, Minn. Dig. §§ 8939, 8940, 8947. In the early case of United States v. Gideon, 1 Minn. 226 (292), it was held that a criminal offense should not be created by an uncertain and doubtful construction; and this rule has since been adhered to. See State v. Small, 29 Minn. 216, 218, 12 N. W. 703; State v. Finch, 37 Minn. 433, 34 N. W. 904.

In this connection we cannot be oblivious of the fact that, if this statute is to be read literally, it is openly and hourly violated. In East v. Brooklyn Heights R. Co. 195 N. Y. 409, 88 N. E. 751, 23 L.R.A.(N.S.) 513, it was held that a statute making it a misdemeanor for any person to get "on any car or train while in motion for the purpose of obtaining transportation thereon as a passenger," did not apply to persons in good faith intending to take passage, but only to those endeavoring to obtain transportation contrary to the rules of the company.

"It is contended," said Mr. Justice Gray, at pages 411, 412, [88 N. E. 752, 23 L.R.A.(N.S.) 513] "that the second subdivision of this section is applicable to plaintiff's conduct. If this contention is correct, then an act of such common occurrence as to be almost a characteristic trait of our human nature, without distinction of class,

or calling, is stamped with criminality. There is, probably, not an hour of the day, when the statute is not offended against by persons in boarding cars while in motion; if it has the meaning contended for. That the legislature ever intended such an application of its enactment, I do not believe. If there is any doubt as to the proper construction of the statute, then it should receive that which would not lead to unreasonable, if not absurd, consequences. Being penal in its nature, it should not be construed to be applicable to an act, otherwise innocent and natural, and of common occurrence; unless such a legislative intent is clear and unmistakable. If it be conceded that the general language, in which the legislative purpose is expressed, upon its face, raises a doubt as to what was intended, that doubt should be resolved in favor of a construction, which will accord with a just notion of what was to be forbidden."

So also in Diddle v. Continental Casualty Co. 65 W. Va. 170, the court, construing a statute similar to ours, declared, at page 177 [63 S. E. 962, 966, 22 L.R.A.(N.S.) 779]:

"The statute is aimed at trespassers. It is penal and ought to be strictly construed. Passengers and employees are expressly excepted, because they are on the premises by invitation of the railroad company, and have right and frequent occasion to board trains."

Authorities are cited in some measure supporting defendant's contention. See Raben v. Central Iowa Ry. Co. 74 Iowa, 733, 34 N. W. 621; Young v. Chicago, M. & St. P. Ry. Co. 100 Iowa, 357, 69 N. W. 682, (construing an Illinois statute). But it is to be noted that the terms of the statutes there construed are of broader inclusion than ours, not even excepting passengers from their operation. They are not directly in point, and even if they were we would not be content to follow them.

3. Under ordinary circumstances, it is negligence to alight from a moving train; but, when the train does not stop long enough to permit those lawfully on board to leave it, one physically active, with freedom of motion unimpeded, cannot be held guilty of contributory negligence as a matter of law, for alighting when the train is slowly moving by the station platform. The same rules apply as in cases where persons, not trespassers, attempt to or board a moving train.

Hull v. Minneapolis, St. P. & S. S. M. Ry. Co. 116 Minn. 349, 355, 133 N. W. 852; Butler v. St. Paul & D. R. Co. 59 Minn. 135, 142, 60 N. W. 1090; 1 Dunnell, Minn. Dig. § 1277. Under the proofs we hold the questions in this regard were for the jury.

Order reversed.

BROWN, C. J., and BUNN, J., not having heard the argument, took no part.

HALLAM, J.

I concur in the order granting a new trial, but do not concur as to the ground upon which the order is based.

The trial court dismissed the case on the ground that the act of plaintiff in stepping from a train in motion was forbidden by statute, and held that the violation of the statute conclusively established negligence on his part. It appears to me that this was error. Whatever may be the rule in other jurisdictions, it is well settled in this state that, where a statute or ordinance is made the basis of personal duty to secure safety, its violation is not conclusive evidence of contributory negligence, but only a circumstance to be considered in connection with all the evidence in the case. In my opinion the question of plaintiff's negligence should have been submitted to the jury. Ericson v. Duluth & Iron Range R. Co. 57 Minn. 26, 58 N. W. 822; Oddie v. Mendenhall, 84 Minn. 58, 86 N. W. 881; Day v. Duluth Street Ry. Co. 121 Minn. 445, 141 N. W. 795, and the order of dismissal should be reversed on this ground.

I cannot, however, concur in the conclusion reached in the opinion that the statute mentioned does not apply to a person not a passenger, who accompanies a passenger to a railroad station. The statute makes it unlawful for "any person other than a passenger or employee to get on or off" a car while in motion. A person accompanying a passenger is neither a passenger nor employee. He is accordingly within the terms of the statute. It is said there was an intent to except from the operation of this statute persons who have a lawful right to go upon a train or who are lawfully upon it. The legislature expressed no such intent. It expressly excepted pas-

sengers and employees, and where express exceptions are made the inference is a strong one that no other exceptions were intended. Cooke v. Iverson, 108 Minn. 388, 397, 122 N. W. 251. Construing the language in its ordinary sense, the intent is plain to include all persons not expressly excepted.

It is true that exceptions from general terms of a statute will sometimes be implied. It has been said: "If there arise out of them collaterally any absurd consequences, manifestly contradictory to common reason, they are with regard to those collateral consequences void," as where a legislative act gives a man power to try all causes that arise within the Manor of Dale, yet, if a cause should arise in which he himself is a party, the act is to be construed as not to extend to that case, because it is unreasonable that any man should determine his own quarrel. 1 Blackstone, (Cooley's Ed.) 91.

This rule has been applied in this state and it has been said: "The general terms of a statute or ordinance may be subject to implied exceptions, founded in the rules of public policy and the maxims of natural justice, so as to avoid absurd and unjust consequences; for it must be presumed that the legislature did not intend such results." Start, C. J., in State v. Barge, 82 Minn. 256, 84 N. W. 911; Duckstad v. Board of Commrs. of Polk County, 69 Minn. 202, 71 N. W. 933.

But this court has always been extremely reluctant to construe into a statute, by the application of this rule, an exception not written therein. In Gollnik v. Mengel, 112 Minn. 349, 128 N. W. 292, the question arose whether an exception could be made in our statute relating to descent of property, so as to exclude from its benefit an heir who had murdered his ancestor. Even in that extreme case the court refused to construe an exception into the statute. The reason was well stated in the opinion, written by Justice O'Brien, as follows:

"We are now asked to add to a clear and unambiguous statute an exception, and, while the demand in this instance appeals to every normal person's sense of justice, it would establish a rule of construction, the limitation of which no one could foresee."

In Pirie v. Chicago Title & Trust Co. 182 U. S. 438, 21 Sup. Ct.

٩06, 45 L. ed. 1171, it was said that no mere omission nor failure to provide for contingencies, which it may seem wise to have specially provided for, justifies any judicial addition to the language of a statute. And in Maxwell v. Moore, 22 How. 185, 16 L. ed. 251, the same court, through Catron, J., said: "Where the legislature makes a plain provision, without making any exception, the courts of justice can make none, as it would be legislating to do so."

It seems to me that this case is not within the rule which justifies a court in implying exceptions not expressed in a statute. There is nothing absurd or contradictory to common reason in prohibiting any person from jumping off a moving train. If the construction placed upon this statute in the opinion be correct, then the statute, as applied to the act of getting on a car, simply prohibits acts of trespassers, which would be unlawful without any statute, and as applied to the act of jumping off a car simply means that a trespasser, after he once succeeds in getting on a car, shall ride thereon until the car comes to a full stop.

The practice of people accompanying friends and relatives to a railroad station is universal. The practice of their getting on the train is common. The practice of their remaining until the train starts is common enough, and has resulted in many disasters. A statute prohibiting such persons from getting off while the car is in motion, appears to me to be wholesome and reasonable. The prohibition of such practice is within the plain language of this statute. A court has no right to say that the prohibition of this practice should be excepted from the terms of the statute as an absurd or unjust consequence, contrary to common reason, or that such exception is demanded by the rules of public policy or the maxims of public justice.

It appears to me that neither the West Virginia nor the New York case cited is in any sense decisive of the question here involved. In the West Virginia case the statute construed was similar to ours, but the question was whether a shop employee was an employee within the meaning of the act, and it was held that he was. The statute in the New York case forbade only the act of getting on cars in motion, and the construction was affected in some measure by the

history of the legislation. Furthermore, there may be serious doubt as to the view there indicated that the boarding of a moving car is an act so "innocent and natural" that the prohibition of it should call for an implied exception in favor of any class of persons.