JOHN P. RAUSCHER v. GREAT NORTHERN RAILWAY COMPANY AND ANOTHER.

JOHN BARTON PAYNE, ETC., APPELLANT.

June 16, 1922.

No. 22,822.

**When railway mail clerk may recover for injury in getting off a moving engine.**

1. Plaintiff was a railway mail clerk. If the engineer on a mail train failed to blow the whistle for a station at which mail was put off, it was plaintiff's duty to notify him of his omission. For the purpose of giving such notice, plaintiff went upon an engine after it was disconnected from the train. There was evidence from which the jury might find that plaintiff was placed in a position of danger, to the knowledge of the fireman, by the act of the engineer in setting the engine in motion in ignorance of plaintiff's presence and before he had time to complete giving the notice and alight from the engine. *Held* that plaintiff may recover damages for an injury sustained while getting off the moving engine, if ordinary care on the part of the fireman required him to call the engineer's attention to plaintiff's danger.

**Alighting from a moving train is not always negligence.**

2. It is not under all circumstances a negligent act to alight from a moving train. The rate of speed, the circumstances which limit the free agency of the person alighting, and his position, if one of peril, are elements to be considered, and, within reasonable limits, his negligence is a question for the jury.

[1]Reported in 188 N. W. 1017.

No errors in admission of evidence—verdict not excessive.

    3. There were no errors in the admission of evidence and the verdict as reduced was not excessive.

Action in the district court for Ramsey county to recover $10,960 for personal injuries. The case was tried before Dickson, J., who at the close of the testimony denied defendants' motions for directed verdicts, and a jury which returned a verdict for $6,960. The motion of defendant railway company for judgment notwithstanding the verdict was granted, Catlin, J. The motion of defendant director general of railroads for judgment notwithstanding the verdict was denied. The motion of defendant director general of railroads for a new trial was granted, unless plaintiff consented to a reduction of the verdict to $4,960. From the order denying his motion for judgment notwithstanding or for a new trial, after acceptance of the reduced verdict, John Barton Payne, director general, appealed. Affirmed.

    *M. L. Countryman, A. L. Janes* and *J. H. Mulally*, for appellant.
    *Harry P. Churchill* and *Patrick J. Ryan*, for respondent.

Lees, C.

Action for damages for personal injuries. Plaintiff was injured on November 22, 1919, while employed as a mail clerk on one of defendant's trains. His run was from St. Paul to Casselton, North Dakota. A rule of the postal department required mail clerks to notify the engineer on a mail train who had failed to sound the whistle for a station at which mail was to be put off, of his failure so to do. Printed forms of notice were supplied to the clerks, and it was their duty to deliver the notice to the engineer at the first stop after such a station had been passed without whistling and report the fact to the postal authorities. Doran was a station at which the train did not stop, but where mail was put off. After passing Doran, the first regular stop was at Breckenridge, which is a division point. The train arrived there at 6 a. m. The substance of plaintiff's testimony was that the engineer failed to blow the whistle for Doran. On arriving at Breckenridge, he got out of the mail car and

went forward to give him notice as required by the rule. Plaintiff was in his shirt sleeves; his hands were bare; the morning was cold, and the ground was covered with snow and ice. The engine had been disconnected from the train and was standing at the platform not far from the mail car. When plaintiff got to the engine, he called out to the fireman, who was standing in the gangway that he was a postal clerk on the train. The fireman nodded and plaintiff then climbed on the engine and said: "You didn't blow your whistle at Doran." The fireman answered: "No." Plaintiff then began to tell him that on the last trip the mail bag had been cut at Doran, but, before he finished, the engine started to move ahead. Plaintiff exclaimed: "Ain't that man going to stop for me so that I can get off?" but the fireman turned away and went into the cab. Plaintiff then started down the engine steps, holding to the side rods and facing the engine. It began to move faster and he decided to drop off for fear that he would be carried too far to get back to his car before the train went on. His vision was obscured by exhaust steam. When his feet struck the ground, he slipped on the ice and fell and injured his elbow. The engine was then moving about as fast as an ordinary man can run.

One charge of negligence was that, after plaintiff got upon the engine, the engineer negligently put it in motion, and, as plaintiff was attempting to alight from it, negligently increased its speed. The jury were instructed as follows:

"While he (plaintiff) may not have had and did not, as a matter of law, have a legal right to go upon the engine, he was upon the engine and his status there was at least equal to the status of a trespasser * * * whose presence is known to the persons in charge of the engine. * * * Whether or not these defendants have been guilty of negligence * * * depends upon what you find as to the conduct of this fireman. * * * If, from a fair preponderance of the evidence * * * you find that the defendant was, in the conduct of its fireman on that occasion, guilty of some failure to use ordinary care for the safety of Rauscher as he stood upon that engine * * * which proximately * * * caused this acci-

dent * * * and * * * that the plaintiff himself was not guilty of any failure to use ordinary care under the circumstances for his own protection, then you will be obliged to return a verdict in favor of the plaintiff."

The fireman testified as follows:

"I was standing on the left side looking out and someone hollered over something about the whistle at Doran, and I just merely turned around and looked and I saw a man standing on the step. He was about half way up the steps there on the right side looking up in the gangway, and I paid no attention to him. I looked the other way. * * * All I understood was 'Whistle at Doran.' I merely looked around and got that and I paid no attention to it. * * * I had other things to look after at that time. * * * He had no business up there, if he was there. * * * I had something else to look after."

The engineer testified that he did not hear any conversation between plaintiff and the fireman and did not see plaintiff; but when he got in on the house track the fireman told him somebody had said something about not whistling at Doran. At the close of the evidence defendants moved for a directed verdict. The motion was denied and plaintiff recovered a verdict for $6,960. Defendants made the usual blended motion. The railway company's motion for judgment was granted and that of the director general denied. The director general's motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $4,960. Plaintiff filed his consent and this appeal followed.

Appellant asserts that plaintiff was a trespasser when he was injured, making this statement in his brief: "The situation is no different from one in which a tramp gets on a freight train and demands that the engineer stop at a certain water tank to let him off, and the engineer refuses." We think this is going too far, for it cannot be gainsaid that plaintiff had or believed he had a duty to perform and was trying to perform it when he got upon the engine. It seems to us that he was at least a licensee and that, if the defendant had

notice of his presence there and that he was in a position of danger, it owed him the duty of exercising reasonable care to avoid injuring him.

The rule of liability to trespassers and licensees is very much the same. Klugherz v. Chicago, M. & St. P. Ry. Co. 90 Minn. 17, 95 N. W. 586, 101 Am. St. 384. It is well settled that plaintiff, though a trespasser, licensee or volunteer, may recover damages for an injury caused by defendant's omission to use ordinary care for the purpose of avoiding injury to him after becoming aware of his danger. The doctrine is founded on principles of humanity, and, as applied to those in charge of an engine or train, requires them to use the means at hand to avert injury to one whom they must know is in a dangerous position. Evarts v. St. Paul, M. & M. Ry. Co. 56 Minn. 141, 57 N. W. 459, 22 L. R. A. 663, 45 Am. St. 460; Pettit v. Great North. Ry. Co. 62 Minn. 530, 64 N. W. 1019; Kelly v. Tyra, 103 Minn. 176-180, 17 L. R. A. (N. S.) 334, 114 N. W. 750, 115 N. W. 636; Shear & Redfield, Neg. § 99. It is but one of many approved applications of the principle, first enunciated in Heaven v. Pender, L. R. 11 Q. B. Div. 503, and quoted approvingly in O'Brien v. American Bridge Co. 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. 503, that whenever a person is by circumstances placed in a position where everyone of ordinary sense would recognize that, if he did not use ordinary care in his own conduct with regard to another person, he would cause danger of injury to that person, a duty arises to use ordinary care to avoid such danger.

The evidence clearly shows that the fireman saw plaintiff on the engine and knew he had a message to deliver and had not completed it when the engineer started the engine to go to the round house. It would permit the jury to find that plaintiff was alarmed and wanted the engineer to stop to let him off, and that, with knowledge of these facts, the fireman deliberately turned his back on him, said nothing to the engineer, and exhibited a callous indifference to plaintiff's safety, because, as he said: "He had no business up there * * * I had something else to look after." True, the engineer knew nothing about his presence when he increased the speed of the engine, but it is fair to assume that a word from the fireman would

have led to a momentary stop, and the jury might well find that, piqued by plaintiff's complaint about the failure to blow the whistle, he refrained from speaking, leaving him to get off as best he could under difficult and dangerous conditions.  The side of an engine is not a place from which an ordinary man may get off safely when the engine is in motion.  This was the first time plaintiff had been on an engine and his anxiety and excitement when he found himself being carried away from his car must have been evident, if his account of what he said and did was true.

We are of the opinion that, under the instructions, the jury might properly find that the proximate cause of plaintiff's injury was the failure to stop the engine when he was upon it in a position of danger known to the fireman and when to stop long enough to let him off would have been an easy matter under all the circumstances.

2.  We are unable to assent to the statement that plaintiff was guilty of contributory negligence as a matter of law because he jumped from a moving engine.  It is not the rule in this state that under all circumstances it is a negligent act to alight from a moving train or car.  The rate of speed at which it is moving, the circumstances which limit the free agency of the person alighting, and whether or not he alights to escape from a position of peril, are elements to be considered, and within reasonable limits his negligence is a question of fact for the jury.  Larson v. Minneapolis & St. L. R. Co. 85 Minn. 387, 88 N. W. 994; Hull v. Minneapolis, St. P. & S. S. M. Ry. Co. 116 Minn. 349, 133 N. W. 852; Street v. Chicago, M. & St. P. Ry. Co. 124 Minn. 517, 145 N. W. 746; Anderson v. Canadian North. Ry. Co. 130 Minn. 373, 153 N. W. 863; Joseph v. Chicago, B. & Q. R. Co. 135 Minn. 239, 160 N. W. 689.

3.  The court did not err in admitting the postal regulations. They showed that plaintiff did not leave his car and go to or upon the engine without reason or necessity, and in any event their admission could hardly be prejudicial to defendant.

4.  The  evidence tends to show that plaintiff's arm has been permanently injured.  As a result of the injury, he was off duty from November 29, 1919, to March 18, 1920; from May 8 to June 1, 1920; and from March 18 to June 9, 1921.  He was receiving $2,150

a year. In handling mail he is necessarily compelled to use his arms constantly. He has been a mail clerk for 12 years. His ability to follow his occupation without discomfort and as efficiently as before he was injured has been somewhat impaired. The damages, as reduced, are not excessive.

Order affirmed.