## PHEBE VAN HOUSE v. CANADIAN NORTHERN RAILWAY COMPANY AND OTHERS.[1]

February 23, 1923.

No. 23,238.

**Question of railroad's negligence for the jury.**

    1. The evidence relative to the cause of plaintiff's fall from a moving train from which she was about to alight at a station made the question of defendants' negligence one for the jury.

**Continuance denied when physician failed to produce X-ray plates.**

    2. There was no abuse of discretion in the denial of defendants' motion for a continuance for the failure of a physician, who gave his opinion as to the nature of plaintiff's injuries, to produce X-ray plates which he took into consideration in giving his opinion. Neither was

[1] Reported in 192 N. W. 493.

there an abuse of discretion in the denial of defendants' request that plaintiff be required to have another X-ray picture taken.

### Testimony of witness concerning health of plaintiff competent.

3. It having been shown that a witness, not competent to testify as an expert, had seen plaintiff almost daily for four years, it was proper to permit him to testify that her health was good before she was injured.

### Opinion of physician in reference to complaints of pain.

4. When a patient complains of pain after an accidental injury of which there are no external indications, it is competent for a physician to give his opinion as to whether the pain is real, feigned or imaginary, basing his opinion on the actions and appearance of the patient.

### Two acts in combination may be a proximate cause of injury.

5. The jury might properly find that starting the train while plaintiff was alighting was a proximate cause of an injury she sustained, notwthstanding the fact that she testified she was injured because the brakeman pulled her off while the train was in motion. Each of two acts which combine to produce an injury may be a proximate cause of the injury.

### Question for jury whether passenger is negligent in alighting from a moving train.

6. Under the evidence, the court did not err in instructing the jury that where a train does not stop at a station long enough to allow passengers to alight safely and a passenger is injured while in the act of getting off after the train is in motion, it is for the jury to say whether the act of the passenger was negligent. There was sufficient evidence to support a finding that such act was not negligent.

### Charge as to weight of physicians' testimony not prejudicial.

7. Considering the charge as a whole, there was no prejudicial error in instructing the jury that the testimony of the physicians as to the nature and extent of plaintiff's injuries was entitled to considerable weight.

### Verdict of $3,000 not excessive.

8. The verdict was not excessive.

Action in the district court for Beltrami county to recover $3,000 for injuries received in alighting from defendants' train. The case was tried before Wright, J., who when plaintiff rested denied defendants' motions for directed verdicts and at the close of the testimony denied motions by both parties for directed verdicts, and a jury which returned a verdict for the amount demanded. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, Canadian Northern Railway Company and Canadian National Railways appealed. Affirmed.

*Hector Baxter, George E. Ericson* and *W. E. Rowe,* for appellants.
*Middleton & Middleton,* for respondent.

LEES, C.

Plaintiff, a passenger on one of defendants' trains, was injured on March 21, 1921, while alighting from the train. She brought this action, charging defendants with negligence, and recovered a verdict. Defendants have appealed from an order denying their alternative motion for judgment or a new trial.

1. Accompanied by Mr. and Mrs. Thurston and their children, plaintiff boarded the train at Beaudette to go to Graceton in this state. When the train arrived at Graceton, Thurston got off first. As his wife, followed by plaintiff, was getting off, the train began to move. Mrs. Thurston got off safely, but plaintiff fell or was thrown from the steps of the day coach and was injured. She testified that the brakeman seized her arms, said "come on," and pulled her from the steps, and she is corroborated by Mrs. Thurston and one of the children. She is contradicted by the brakeman and by defendants' assistant superintendent, who was an eye witness. The brakeman testified that when the train stopped he stood near the vestibule of the day coach and saw a woman and then a man get off; that the conductor had not told him and he did not know there were passengers for Graceton; that, seeing no one following the man and woman who got off, he went forward to the baggage car; that the conductor asked him if it was all right to go, that he answered, yes, and the train started; that, as he stood on the station platform, he saw Mrs. Thurston step off the day coach, and ran back and discovered plain-

tiff on the steps, called to her to step back, told her he would stop the train, and got upon the lowest step, grasping the handholds; that, instead of letting him pass, she came on quickly; that he lost his grip upon one of the handholds and one of his feet got off the step; and that plaintiff fell off, and he immediately pulled the cord and stopped the train. In the main, he is corroborated by the assistant superintendent. It would serve no useful purpose to make a more extended statement of the evidence. In our opinion it would support a finding either way with respect to the manner in which plaintiff fell. She was an elderly woman weighing over 200 pounds. It is not easy to suppose that the brakeman pulled her off while the train was in motion, but we cannot say that reasonable men would not be warranted in concluding that this is what happened. The motion for judgment was properly denied, and so was the motion for a new trial unless there were errors of law prejudicial to defendants.

2. The nature and extent of plaintiff's injuries were important issues. In June, 1921, she was taken in an automobile from her home in Graceton to Warren, Minnesota, where she was examined by Dr. Bratrud, who subsequently gave testimony in her behalf. In connection with the examination, X-ray photographs were taken of the lower portion of her spine. Basing his testimony in part upon the showing made by the X-ray plate, Dr. Bratrud gave it as his opinion that plaintiff had sustained a compressive fracture of the fifth lumbar vertebra and, as a consequence, would suffer more or less pain for the remainder of her life. In the course of his cross-examination he was asked to produce the plates and answered that he had left them at Warren, 150 miles more or less from the place of trial. Complaint is made because the court denied defendants' motion for a continuance until the plate could be gotten and examined by defendants' medical experts, and their subsequent request that plaintiff be required to go to the office of a local physician to have another X-ray photograph taken.

It is so largely a matter of discretion with the trial court to grant or deny a motion for a continuance that this court rarely interferes. Under the circumstances mentioned later, the denial of the motion was not an abuse of discretion. McAllister v. St. Paul City Ry. Co. 105 Minn. 1, 116 N. W. 917.

Whether the court should have required plaintiff to submit to the taking of another X-ray photograph is a question not free from doubt. There is little authority on the subject. Such as we have found is to the effect that trial courts have broad discretionary powers in this regard. Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141; Boelter v. Ross Lbr. Co. 103 Wis. 324, 79 N. W. 243; Dean v. Wabash R. Co. 229 Mo. 425, 129 S. W. 953; State ex rel. Carter v. Call, 64 Fla. 144, 59 South. 789, 41 L. R. A. (N. S.) 1071. At the instance of defendants, plaintiff had been requested to submit and had submitted to a physical examination by four doctors, two of whom testified in her behalf and two in defendants' behalf. None of them said they were unable to form an opinion as to the nature or extent of her injuries without an X-ray examination. Undoubtedly they would have had a better foundation for their opinions if they had seen X-ray plates. It was within the power of the court to grant defendants' request, for it is a matter of common knowledge that the art of taking X-ray photographs has been so developed that danger or serious inconvenience to the patient no longer attends their taking. But it does not follow that a court has no discretion in acting on such a request. Under all the circumstances, we cannot say that there was an abuse of discretion in the denial of the request.

3. Over defendants' objection, Thurston was permitted to testify that for four years before the accident plaintiff's health had been good. He was not a physician, but had seen her almost daily during that period. There was no error in the reception of this evidence. Tierney v. Minneapolis & St. L. Ry. Co. 33 Minn. 311, 23 N. W. 229, 53 Am. Rep. 35; Bannister v. George H. Hurd Realty Co. 131 Minn. 448, 155 N. W. 627; Cin. Ry. Co. v. Nolan, 161 Ky. 205.

4. Two physicians who had examined plaintiff were asked to give their opinion as to whether "her story of her ailment" or the symptoms of injury she manifested were feigned or real, and answered that they believed the pain of which she complained was real. They had testified that they found a point of marked tenderness low on the spine, but no external evidence of injury. Defendants insist that, where there are no marks of injury, it is error to permit a physician

to express an opinion as to the genuineness of a patient's complaints of pain. It was held in a well-considered case that, when a patient complains of pain following a fall and there are no indications of physical injury, it becomes a question for experienced physicians to determine whether the pain is real, feigned or imaginary, and it is competent for them to give an opinion from the general appearance and actions of the patient. Quaife v. Chicago & N. W. Ry. Co., 48 Wis. 513, 4 N. W. 58, 33 Am. Rep. 821. The same conclusion was reached in Harrold v. Winona & St. P. R. Co. 47 Minn. 17, 49 N. W. 389, although in that case there were external evidences of injury. In the present case there was testimony that plaintiff winced whenever pressure was applied at a certain point over her spine. In a minor degree, this was an involuntary manifestation of pain, and, within the rule of the cases above cited, it was competent for the physicians to express an opinion as to whether the pain was real or pretended.

5. The attention of the jury was called to section 4399, G. S. 1913, and they were instructed that defendants were negligent in starting the train before the plaintiff got off, but that such negligence was not to be considered unless it was the proximate cause of her injuries. Defendants insist that it could not be a proximate cause in view of plaintiff's testimony that she did not intend to get off until the train stopped and would have stayed where she was if the brakeman had not pulled her off. We are of a contrary opinion. If plaintiff's testimony is true, two acts combined to produce the injury: The setting of the train in motion before she got off, and the brakeman's act in getting her off after the train was in motion. Defendants were responsible for both acts. In combination, they caused plaintiff to fall upon the station platform. Each was a proximate cause of her injury. Palyo v. Northern Pacific Ry. Co. 144 Minn. 398, 175 N. W. 687.

Defendants urge that there was no showing that the train was started before passengers had ample time to get off safely. The circumstances made that a question for the jury. Only two of the adult passengers for Graceton had alighted. The other two were in the act of alighting and said they attempted to get off expeditiously.

This phase of the case falls within the rules announced in Keller v. Sioux City & St. P. R. Co. 27 Minn. 178, 6 N. W. 486.

6. If the accident happened as plaintiff said it did, there was no question of contributory negligence in the case. If the true state of facts was related by the brakeman, the question was in the case. As to that, the jury were instructed that under ordinary circumstances a person who attempts to alight from a moving train is negligent, "but, as in this case, where the train does not stop at the station long enough to permit a person lawfully on board to leave it, then it becomes the duty of the jury to determine from all the evidence surrounding the case whether the plaintiff is guilty of contributory negligence." Defendants had pleaded contributory negligence as a defense, but they insist that the quoted portion of the instruction is bad law because it injects the doctrine of comparative negligence into the case. We do not so understand the charge. It is generally held that whether it is negligence per se to get off a moving train depends upon the circumstances. Such is the established rule in this state. The cases are cited in Rauscher v. Payne, 152 Minn. 368, 188 N. W. 1017. Of course the circumstances may be such that the question should not be submitted to the jury. Many courts hold that it is usually a question for the jury to determine whether a passenger is negligent in alighting from a moving train after an insufficient stop. See notes to Hoylman v. Kanawha & M. R. Co. 22 L. R. A. (N. S.) 745; Hayden v. Chicago, M. & G. R. Co., L. R. A. 1915C, p. 182. According to the brakeman, the train had just got under way. Mrs. Thurston had got off safely and plaintiff was following her. He told her he would stop the train. She may or may not have heard and understood him. Her actions indicated that she did not, for she came on quickly and fell. He was in her way but did not stop her. He is not even sure that she came in contact with him. It may be inferred that she thought she could get off safely. Of course all this is contrary to her own testimony. But if the jury were convinced that the brakeman's version was correct, the instruction was proper and the jury might find plaintiff free from negligence which would defeat a recovery.

7. When instructing the jury on the subject of damages, the court said the testimony given by the physicians was "entitled to considerable weight." Citing Moratzky v. Wirth, 74 Minn. 146, 76 N. W. 1032, defendants assert that this was error. It is to be noted that the instruction applied to the physicians who testified for defendants as well as to plaintiff's physicians, so it would seem that, if there was error, it was neutralized. However, it was immediately followed by the statement that where the doctors disagree the jury must determine for themselves the value of the testimony, and by a further instruction that the extent of plaintiff's injuries should be determined by the consideration of all the testimony and not only that of the doctors. The charge as a whole was not a departure from Moratzky v. Wirth, and we think it is not open to serious criticism.

8. The amount of the verdict was $3,000. We hold that it was warranted by the evidence and does not indicate that the jury were actuated by passion or prejudice.

We have discussed the principal assignments of error. The others have not been overlooked. All have been vigorously argued by defendants' counsel. We think the case was fairly tried, is free from prejudicial error, and that there is no substantial basis for the charge that it was trumped up or that the jury returned a verdict out of sympathy for a woman or prejudice against a railroad company.

Affirmed.