THOMAS LEONCZAK v. MINNEAPOLIS, ST. PAUL & SAULT STE MARIE RAILWAY COMPANY.[1]

December 26, 1924.

No. 24,117.

**Passenger ejected from moving train.**
1. The evidence sustains a finding that the defendant ejected the plaintiff from a moving train on which he was a passenger.

**Trainmen negligent in advising plaintiff to alight.**
2. The evidence sustains a finding that the trainmen of the defendant advised or directed the plaintiff, a passenger, to alight from a moving train, assuring him of safety, and that in so doing they were negligent.

**Plaintiff not negligent in present case.**
3. Ordinarily, though not always, it is negligence as a matter of law for a passenger to alight from a moving train. It is proper, in

[1]Reported in 201 N. W. 551.

determining the question, to consider that the trainmen advised alighting and gave assurances of safety. The evidence sustains the finding that the plaintiff was not negligent.

**Defendant not entitled to instruction requested.**

4. There was evidence that the conductor before the plaintiff boarded the train informed him that the train would not stop at the point designated in his ticket, but that it would stop at a crossing a few hundred feet beyond; and that the trainmen, as the train neared his destination, informed him that the train would not stop until it reached a station 5 or 6 miles beyond, and negligently advised him to alight from the moving train. Under such circumstances the defendant was not entitled to an instruction that if the conductor gave the plaintiff the information stated he could not recover.

**Information obtained by physician was privileged.**

5. The plaintiff received medical attention from a physician. Another physician was present, and at the request of the attending physician participated in the examination of the plaintiff. It is *held* that the information acquired by the latter physician was privileged within the statute.

**Damages not excessive.**

6. The verdict is not excessive.

**New trial denied.**

7. There was no misconduct of counsel calling for a new trial.

Action transferred to the district court for Cass county to recover $15,000. The case was tried before Stanton, J., and a jury which returned a verdict for the amount demanded. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Marshall A. Spooner* and *John E. Palmer*, for appellant.

*Andrew Nelson* and *John G. Cedergren*, for respondent.

DIBELL, J.

Action for personal injuries. There was a verdict for the plaintiff. The defendant appeals from the order denying its motion for a new trial.

The plaintiff was a passenger on a way-freight of the defendant from Shovel Lake in Cass county to Pine Tree Spur five miles westerly. He purchased a ticket at Shovel Lake. There was another passenger for the same destination. The train did not stop, though Pine Tree Spur was a usual stopping place to take on and let off passengers. The reason assigned was that the train was a heavy one and if stopped could not be started because of the grade; and there is evidence that the plaintiff was told before he boarded the train that it would not stop. The plaintiff and the other passenger jumped off a few moments after the train passed the spur. The plaintiff was injured.

1. One claim of the plaintiff is that the trainmen ejected him. There is evidence supporting his claim. It is in many respects improbable. It may be that they suggested to him that he could get off safely, advised and urged him to do so, gave him assurances of safety, but did no more. However, there is evidence in support of his claim that he was ejected and it was for the jury. If he was ejected and injured the defendant is liable.

2. There is evidence in behalf of the plaintiff, altogether denied by witnesses of the defendant, that when the train neared Pine Tree Spur the trainmen told the two passengers that the train would not stop until it reached Remer, some 5 or 6 miles beyond; that they said the train was not going fast; and that they advised them to jump off, giving them some assurance of safety.

If the trainmen advised or directed the plaintiff to alight the jury was justified in finding negligence. Fullerton v. C. G. W. R. Co. 159 Minn. 474, 199 N. W. 93; Joseph v. C. B. & Q. R. Co. 135 Minn. 239, 160 N. W. 689; Holden v. G. N. Ry. Co. 103 Minn. 98, 114 N. W. 365; Jones v. C. M. & St. P. Ry. Co. 42 Minn. 183, 43 N. W. 1114. The evidence sustains a finding that the trainmen so advised or directed the plaintiff.

3. The defendant claims that the plaintiff was guilty of contributory negligence as a matter of law. The general rule is that one who alights from a moving train is negligent as a matter of law, but the circumstances may be such as to make a question for the jury. Jones v. C. M. & St. P. Ry. Co. 42 Minn. 183, 43 N. W.

1114; Butler v. St. P. & D. R. Co. 59. Minn. 135, 60 N. W. 1090; Street v. C. M. & St. P. Ry. Co. 124 Minn. 517, 145 N. W. 746; Anderson v. C. N. Ry. Co. 130 Minn. 373, 153 N. W. 863; Rauscher v. G. N. Ry. Co. 152 Minn. 368, 188 N. W. 1017; Van House v. C. N. Ry. Co. 155 Minn. 57, 192 N. W. 493, 28 A. L. R. 357.

That one is advised or urged to alight by the trainmen and is given assurance of safety is proper to be considered on the question of negligence. Jones v. C. M. & St. P. R. Co. 42 Minn. 183, 43 N. W. 1114; Joseph v. C. B. & Q. R. Co. 135 Minn. 239, 160 N. W. 689; Fullerton v. C. G. W. R. Co. 159 Minn. 474, 199 N. W. 93; note 22 L. R. A. (N. S.) 751, 759; note L. R. A. 1915C, 184, 189. Whether the plaintiff was negligent was for the jury.

4. From a point 1,600 feet east of the Pine Tree Spur to a point 1,200 feet west there was a one-half of one per cent upward grade. The train was heavily loaded. It was difficult to start the train if stopped on the grade. The conductor testifies that at Shovel Lake he told the plaintiff in substance that the train would not stop at the spur, but that it would stop at a crossing near the top of the grade, a few hundred feet farther on. This was after the plaintiff had bought his ticket but before he had boarded the train. With this testimony in view the defendant requested instructions to the effect that the plaintiff could not recover if the conductor made the statements indicated. They were refused and error is assignd.

In view of what is said in paragraph 2 relative to the statements of the trainmen as the train neared Pine Tree Spur, the information given by the conductor to the plaintiff at Shovel Lake did not prevent a recovery. If negligent directions to alight were given by the trainmen the defendant was liable, in the absence of contributory negligence, notwithstanding what the conductor said at the station. What otherwise would be the effect of the conductor's statement need not be determined. The defendant by its ticket agreed to stop at the station. The statute requires a train to stop at stations at which it is advertised to stop a sufficient time to discharge passengers safely. G. S. 1923, § 4898; G. S. 1913, § 4399. The application and effect of the statute we do not consider.

5. The plaintiff went to the office of Dr. Dunne, a physician at Remer, for medical advice and treatment. Dr. Spinks was there. The defendant offered to prove by Dr. Spinks the condition found on the examination made by Dr. Dunne. The evidence was rejected upon the objection of the plaintiff. Dr. Spinks testified that Dr. Dunne asked him to look at the plaintiff; that he asked him because he was a physician and surgeon; that he wanted his professional opinion; that the plaintiff did not object; that he participated in the physical examination with his consent; that the examination was in a professional capacity as a physician and surgeon; that Dr. Dunne asked him to act in such capacity; that what he learned from the examination was learned in order to enable him to act in that capacity; and that after the examination he gave his professional opinion to Dr. Dunne.

Under our statute a physician or surgeon cannot, without the consent of his patient, disclose any information which he acquired "in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity." G. S. 1923, § 9814 (4); G. S. 1913, § 8375 (4). The evidence was properly excluded. Green v. Town of Nebagamain, 113 Wis. 508, 89 N. W. 520; Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770; Mutual Life Ins. Co. v. Owen, 111 Ark. 554, 164 S. W. 720; Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709, 14 L. R. A. (N. S.) 565, 123 Am. St. 415, 13 Ann. Cas. 932.

6. The verdict was for $15,000. Some of the plaintiff's injuries are uncertain. The case is not one, however, of merely subjective symptoms. There is objective evidence of actual physical injury. There is also evidence of active malingering.

The plaintiff was 38 years of age. He had a small farm at Pine Tree Spur. He was accustomed to farm work and work in the woods. He was not of large earning capacity. The testimony of the physicians of the two parties is quite at variance. If that favorable to the plaintiff's claim is true he cannot now do substantial work and will not be able to do such work in the future. He and his witnesses may have exaggerated his injuries, and the verdict may be liberal. We cannot say that the plaintiff's condition is not

the result of injuries sustained when he jumped from the train or that the verdict is excessive. It was all for the jury.

7. There was no misconduct of counsel for plaintiff calling for a new trial. In his argument to the jury he referred to the promotion since the accident of a number of the trainmen who were witnesses, and persistently suggested a connection between their promotion and their testimony favorable to the defendant. It is not surprising that there were promotions in the 5 years and 8 months elapsing between the accident and the trial. The argument was forced and weak and ordinary jurors would note its logical infirmity. It was not fair and was a little provoking—nothing more.

The errors claimed in the ruling on evidence do not require discussion.

Order affirmed.

STONE, J. (dissenting.)

It seems to me that, in the interests of justice, a new trial is required. The unsatisfactory nature of plaintiff's testimony, both as to the occurrence and its results upon himself, together with the surprisingly large verdict, indicate the presence of passion and prejudice contributing to, if not controlling, the verdict.