## SELMA DAHLEN v. A. B. POLINSKY.[1]

November 22, 1935.

No. 30,473.

Mitchell, Gillette, Nye & Harries and W. O. Bissonett, for appellant.

Jenswold, Jenswold & Dahle, for respondent.

[1]Reported in 263 N. W. 602.

HILTON, JUSTICE.

In this, a personal injury action, plaintiff had a verdict. This is an appeal from an order of the trial court denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff was employed in doing general housework in defendant's home in Duluth, Minnesota. While in the performance of her duties she fell down the basement stairway and was injured. Plaintiff claims that the stairway was not properly and sufficiently lighted, and upon the theory under which the case was submitted the jury could well find that the plaintiff was justified in that claim.

The trial judge charged that certain parts of 1 Mason Minn. St. 1927, § 4147 (L. 1913, c. 316, § 7) were applicable to this case. That section provides:

"All stairways and inclined footways, and all points where there is a break or change in the floor level or in the character of floor surface, where persons may have to walk or pass, and all dangerous places, all prime movers and all moving parts of machinery where, on or about which persons work or pass, or may have to work or pass in emergencies, shall be kept properly and sufficiently lighted during working hours."

He further instructed: ·

"Now, that is a statute of the state of Minnesota with reference to the lighting of stairways, under certain circumstances, and if you find from the evidence that the defendant did not, during the plaintiff's working hours, keep the stairway, leading into the basement, properly and sufficiently lighted, this was a violation of the statute; and if such violation proximately resulted in her injuries, such failure was, of itself, negligence on the part of the defendant, for which he might be liable."

We need consider only two of the three assignments of error:

"(1) The court erred in denying the defendant's motion for a directed verdict at the close of the evidence and denying defendant's motion for judgment notwithstanding the verdict.

"(2) The court erred in its charge to the jury wherein it submitted to the consideration of the jury section 4147 of Chapter 23, Mason's Minnesota Statutes for 1927."

The court submitted the question of contributory negligence to the jury, and it absolved the plaintiff therefrom. The only question is as to the application of § 4147. Does it apply to a domestic servant in a private dwelling house? Defendant strenuously insists that it does not. L. 1919, c. 491, relates to the protection of employes, and § 1 thereof expressly excludes "domestic service or agricultural labor" from the operation of the act. L. 1913, c. 316, which also relates to the protection of employes, does not so expressly exclude those workers, and thus it might be inferred that it was not so intended in view of the fact that they were excluded in the act of 1919. However, it would seem that they were so expressly excluded in the later act out of an abundance of caution rather than because of any feeling on the part of the legislature that all sections of chapter 316 of the Laws of 1913 were to apply to every class of workers. Furthermore, in view of the fact that the two acts have practically the same general purpose, there is no reason to believe that the legislature would exclude such workers from the operation of the provisions of one act and not the other. The history behind these acts indicates that their primary purpose was to abolish unsatisfactory working conditions in trade, mercantile, manufacturing, and similar establishments.

A very compelling reason why we should hold that the section in question is not applicable to the facts of this case is that the statute is penal in nature, an omission to comply with any of its requirements being a misdemeanor and punishable by fine or imprisonment. The comment of this court in State v. DeGuile, 160 Minn. 191, 193, 199 N. W. 569, is much in point here:

"The statute [the one there considered] is in derogation of common right; conduct devoid of moral turpitude is made criminal by legislative fiat. It is a familiar rule of construction that a statute regulating conduct which is not criminal or wrongful unless it has been made so by the statute is to be strictly construed,

and the statute is not to be extended by implication to classes not clearly within its terms."

On the same proposition see 19 Minn. L. Rev. 676, 677. In State v. Walsh, 43 Minn. 444, 445, 45 N. W. 721, it was stated:

"A statute is not to be deemed to make an act criminal, which would not have been so except for the statute, unless the intention of the legislature to effect that result is apparent, and not seriously doubtful; and if, applying the proper principles of construction to ascertain the intention of the legislature expressed in the law, it remains fairly doubtful whether it was intended to embrace acts or conduct like that under consideration, such acts or conduct must be regarded as not within the statute."

Anderson v. Firle, 174 Minn. 333, 219 N. W. 284, approved of the proposition that as a general rule penal statutes must designate the prescribed acts or omissions so definitely and clearly that no difficulty is encountered in determining whether a given act or omission offends the statute. See also State v. Finch, 37 Minn. 433, 434, 34 N. W. 904; Berg v. Baldwin, 31 Minn. 541, 542, 18 N. W. 821. A statute cannot be given one construction in a civil action and a different construction in a criminal prosecution.

The title of the act of 1913, "An act to require more adequate protection of employes from accidental injury or death in the course of their occupation, repealing certain sections of the factory acts, and providing penalties for violations of the act," perhaps may be said to be broad enough to include domestic servants in a private home. Literally the same may be true of the context of § 7 of that act. But if it is true of § 7, then likewise it is true of §§ 17 and 18 of the same act. Section 17 provides that "*every* building in which laborers are employed shall be provided with sufficient means of escape in case of fire, by more than one way of egress, * * * and every such egress shall be provided with a sign having on it the word 'exit' in letters not less than five inches in height." Under that section it would be necessary to have such signs over all outside doors in private dwellings and farm buildings wherein domestic servants or farm help were employed. Section 18 provides:

"If any such building where persons are employed be more than two stories high, it shall be the duty of the owner of such building to provide at least one fire escape, * * *. Every such fire escape shall be on the outside of the building, connecting on each floor above the first with at least two openings; shall be well fastened and secured, with landings not less than six feet in length and three in width, guarded by an iron railing not less than three feet in height. Such landings shall be connected by iron stairs, not less than two feet wide, and with steps of not less than six-inch treads, placed at an angle of not more than forty-five degrees, and protected by a well secured hand rail on both sides, with an automatic drop ladder, * * *. All doors onto a fire escape shall be metal covered, * * *."

Were plaintiff's theory in this case correct, then the very common private dwelling, if domestics were employed therein, having two stories and an attic, would be required to have an outside iron fire escape as described in the above section. Similar analogies also can be made from other sections of the same chapter. The question is: Did the legislature intend that the act should so apply? We think that it did not.

In Street v. C. M. & St. P. Ry. Co. 124 Minn. 517, 518, 145 N. W. 746, 747, plaintiff was injured as he alighted from a moving train after having assisted a lady passenger to her seat on the train. A statute made it unlawful for "any person other than a passenger" to get off a train while it was in motion. This court in holding that the legislature did not intend that the provision should include the class of which that plaintiff was a member stated [124 Minn. 521]:

"We do not question the power of the legislature to exempt passengers from the inhibition of the statute; but the construction given must be reasonable and practical, and the intent should control though contrary to the letter, thus preventing absurd and unjust results, to be avoided unless the language used will reasonably bear no other interpretation."

Further it was stated:

"In this connection we cannot be oblivious of the fact that, if this statute is to be read literally, it is openly and hourly violated."

That is true in the instant case. It cannot even be supposed that the legislature ever intended that § 4147 was to be construed so as to apply to domestic servants. If it did, it also must apply to farm workers. There are tens of thousands of private dwellings and farm buildings in this state which do not come up to the standards set forth in § 7, much less those of §§ 17 and 18. It would produce absurd and unjust results to hold that § 7 was applicable to the situation here involved. From a reading of the previous legislative acts relative to the protection of employes, and in view of the ridiculous results that would obtain were § 7 applicable here, and because we are dealing with a penal statute, we are convinced that it was not intended that it should so apply. The order appealed from is reversed and judgment directed to be entered in favor of the defendant.

Reversed.