No. 33,999

Roy Kronvall, as Guardian of John Thornbury, a Minor, *Appellee*, v. R. H. Garvey and John Kris, Copartners, doing business as the G-K Farms, of Colby, *Appellants*.

(84 P. 2d 858)

Opinion filed December 10, 1938. 

J. E. Alexander, R. Bowland Ritchie, both of Wichita, and J. H. Jenson, of Hays, for the appellants.

A. W. Relihan, T. D. Relihan, both of Smith Center, Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris and John F. Eberhardt, all of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant's demurrer to plaintiff's petition was overruled, and they appeal.

The petition alleged that plaintiff was fifteen years of age at the time of the events complained of, and that defendants were partners engaged in wheat farming in Thomas county, and owned equipment for that business, including a tractor and a one-way plow weighing about one ton; that on July 20, 1937, defendants employed plaintiff to operate a tractor and one-way plow at a wage of $1.25 per day, and in addition agreed to furnish board and lodging, and that plaintiff continued in such employment until he was injured; that defendants furnished a tractor for plaintiff's use and orally instructed him to use it; that the tractor was old, dilapidated, worn and in bad repair; its rear wheels were equipped with iron lugs; there were fenders over the rear wheels which were not substantial and were insecurely attached to the tractor, the braces or frames intended to hold the fenders in place being worn, broken and out of repair, all of which was known to defendants or could have been known by the exercise of ordinary care and prudence; that knowing all these matters, defendants failed to warn plaintiff it was dangerous to operate the tractor, or dangerous to sit upon or lean against the fenders while the tractor was moving and drawing the plow, and permitted and orally instructed plaintiff to use the tractor and plow in its defective and dangerous condition. It was further alleged that the lands being cultivated were removed from town and from places to board and room, and a "bunk shack" was provided; that it was poorly built, improperly ventilated, had no bathing facilities; that it was impossible for one to get proper rest from work, and was dangerous to the health and life of plaintiff; that the operation of the tractor and plow kept the air filled with dust and dirt, and plaintiff was compelled to work under that condition, and it was unhealthy and dangerous to plaintiff. It was further alleged that on August

———, 1937, while plaintiff was operating the old, dilapidated and dangerous tractor and the plow, plaintiff, not knowing its condition, sat on one of the fenders, which, because of its defective condition, sagged down, causing it to come in contact with the lugs on the tractor wheel; that the fender buckled and pitched plaintiff off the tractor in such manner that he fell directly in front of the plow, which passed over him, injuring him severely. It is unnecessary that details be here set forth. It was further alleged that the occupation for which plaintiff was employed and the place where he worked was dangerous and injurious to the life, limb, health and morals of plaintiff; that there was reasonable cause for defendants to anticipate injury to plaintiff; that defendants knew it was the custom and habit of those operating tractors equipped with rear fenders to lean or sit upon the fenders while the tractor was moving and in operation; that defendants knew that in the operation of the tractor plaintiff would be compelled to work for long hours in a cloud of dust and dirt; that fumes from the tractor are dangerous, cause sleepiness, and cause the operator to shift his position on the tractor to avoid the fumes; that the operation of the tractor and plow is a dangerous occupation by reason of the inherent nature of the work involved and the operation of the machinery itself; that plaintiff was under the age of sixteen years and his employment by defendants was in violation of the laws of Kansas, etc.

Defendants' demurrer to this petition, on the ground it did not state a cause of action, was overruled, and from an adverse ruling they appeal to this court.

Appellants' contention is that it is apparent the petition attempts to state a cause of action under the statutes with reference to child labor (G. S. 1935, ch. 38, art. 6) and that it fails so to do for reasons which will be noted. Appellee's contention is that the petition states a cause of action either under the above statutes or as disclosing negligence actionable at common law.

A review of the statutes with reference to child labor discloses that our first act was Laws 1905, ch. 278, which provided that no child under fourteen years of age shall be employed in factories, packing houses or mines, and that no person under sixteen years of age shall be employed "at any occupation nor at any place dangerous or injurious to life, limb, health, or morals." That act was superseded by Laws 1909, ch. 65, and the original act was repealed. The new act provided in section 1 that no child under fourteen

years of age shall at any time be employed in any factory or workshop not owned or operated by its parents, or in a theater, packing house, operating elevators, or in or about a mine, etc. Section 2 of the act reads as follows:

"Sec. 2. It shall be unlawful for children under sixteen years of age, who are employed in the several vocations mentioned in this act, or in the distribution or transmission of merchandise or messages, to be employed before seven o'clock a. m. or after six o'clock p. m., or more than eight hours in any one calendar day, or more than forty-eight hours in any one week. *No person under sixteen years of age shall be employed at any occupation nor at any place dangerous or injurious to life, limb, health or morals."* (Italics ours.)

The force and effect to be given the italicized portion of that statute was considered in *Casteel v. Brick Co.*, 83 Kan. 533, 112 Pac. 145, where a boy between fifteen and sixteen years of age was employed to drive a horse pulling loaded and empty cars between a steam shovel and a brick plant. In that case it was held:

"In such an action it is not necessary for the plaintiff to prove that the defendant knew that his occupation was dangerous.

"Ordinarily whether a particular occupation is dangerous within the meaning of the statute is a question of fact.

"An occupation is dangerous within the meaning of the statute whenever there is reason to anticipate injury to the person engaged in it, whether the risk arises from the inherent character of the work or the manner in which it is carried on, even although the danger may be eliminated by the exercise of due care and skill on the part of the employee.

"Where the employment of a person under sixteen years of age is unlawful because his occupation exposes him to danger, and in the course of his work he is injured in consequence of such exposure, the violation of the law is the proximate cause of the injury." (Syl. ¶¶ 2, 3, 4, 5.)

The 1909 act was superseded by Laws 1917, ch. 227, which now appears as G. S. 1935, ch. 38, art. 6. Section 1 of this last act provides that no child under fourteen years of age shall be employed in certain designated work, and section 2 provides:

"That no child under sixteen years of age shall be at any time employed, permitted, or suffered to work in or about any mine or quarry; or at any occupation at any place dangerous or injurious to life, limb, health or morals."

Appellant directs our attention to the change made in the last clause of section 2 of the 1909 act by the last clause of section 2 of the act now in force, and contends that the place where the plaintiff was employed was not one of those specifically mentioned, *i e.*, mine or quarry, and that if the employment was unlawful it was by reason the place of employment was dangerous or injurious to life,

limb, health or morals, special stress being laid on the phrase "at any place," and the principal argument being that "place" means the premises where the work is performed, as distinguished from the instrumentalities used in the work. Coupled with that argument is a further one that it was not the legislative intent to prohibit labor in agriculture of one under the age of sixteen years.

We believe appellants put too much emphasis on the phrase "at any place," make "place" the controlling thing, and in effect derive a meaning from the statute rather contrary to what we conceive to be its meaning. It will be observed the legislature, in section 2, first says a child under sixteen years of age shall not be employed in or about a mine or quarry—such employments in all their parts are forbidden. There were other employments which it wished to ban, and it then added the remaining portion of the section.

Appellants direct our attention to the rule that statutes are to be construed as they were understood when they were passed (25 R. C. L. 959) and to the rule of *ejusdem generis*, that is, that where enumeration of specific things is followed by some general word or phrase, such general word or phrase is to be held to refer to things of the same kind (19 C. J. 1255). They then call attention to the fact that the statute prohibits employment at a mine or quarry and argue that those being specifically named, the last portion of the statute must be construed to refer to places, rather than to occupations.

Rules for interpretation and construction of statutes, however, are formulated only for the purpose of ascertaining the intent of the legislature. A review of our previous child-labor statutes, now superseded by the one under consideration, leads to the inquiry: Was the purpose to limit the employment to places not dangerous, or to occupations not dangerous, or must danger be absent from both place and occupation? We think a fair reading of those statutes leads more to the conclusion that what the legislature intended to prohibit was employment at any place in any occupation which is dangerous to life, limb, health or morals of a child under sixteen years of age.

Appellants present a further argument that the above statute was not intended to apply to one engaged in agriculture. This argument is predicated on the fact that the last statute above referred to was enacted in 1917, and at the same session the legislature enacted a workmen's compensation act (Laws 1917, ch. 226) which, under

section 1, declared agricultural pursuits and employments incident thereto to be nonhazardous and exempt from its provisions. It is said the two statutes are in *pari materia* and should be construed together, and thus construed show an intention not to regulate labor on farms. To support that contention our attention is directed to *Voran v. Wright,* 129 Kan. 601, 607, 284 Pac. 807, wherein it was said:

"We think that where different acts affecting the same subject matter are enacted at the same session of the legislature and take effect about the same time, they should all be considered together to ascertain the real legislative purpose and intent.

" 'Laws enacted by the same legislature about the same time and concerning the same subject matter, being *in pari materia,* are to be taken and considered together in order to determine the legislative purpose and arrive at the true result.' (*In re Hall, Petitioner,* 38 Kan. 670, 17 Pac. 649. See, also, *Railway Co. v. Railway Commissioners,* 85 Kan. 229, 116 Pac. 896; *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217.)"

It is difficult to see how the two acts fit into each other. The workmen's compensation act dealt with employees in certain defined employments, and provided for compensation. There were many employments, trades and businesses besides agriculture not within the purview of that act. The child-labor act covered an entirely different field. It prohibited child labor under its provisions and did not otherwise attempt to regulate employment or occupation. Further it is to be noted the first child-labor act was passed in 1905, the second in 1909, while the first workmen's compensation act was not passed until 1911. It was a mere coincidence that both acts received further consideration from the legislature in 1917. It cannot be said both apply to the same subject matter except in the broad sense that each affects labor. The purpose of the one was to provide compensation to employees as limited by the act, and not to regulate labor; the purpose of the other was to prohibit labor by children. The classifications of employment are widely different in the two acts. The legislature did not intend by the provisions excepting agricultural pursuits and employments incident thereto from the workmen's compensation act to make such a provision applicable to the child-labor act.

Appellants' contention that it is inconceivable the legislature intended to deny to healthy boys and girls the right to contribute their labors on the farm is answered by the statute itself. It does not purport to do that. If, however, there is any reason why a child

under sixteen years of age living on a farm is not to be prevented from engaging in an occupation dangerous or injurious to its life, limb, health or morals, in the same manner and to the same extent as one not living on a farm, it has not been made to appear, nor do we believe it was so intended.

In view of what has been said, it is unnecessary to fully consider appellee's contention that in any event the petition states facts showing negligence actionable at common law. Viewed from that standpoint, we think the petition is not demurrable.

The judgment of the trial court is affirmed.