## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. MERLIN HILK.

206 N. W. 2d 360.

March 30, 1973—No. 43529.

___

*Melchert, Hubert & Howe* and *Paul A. Melchert,* for appellant.
*Berens, Rodenberg & O'Connor* and *R. T. Rodenberg,* for respondent.
*Joseph M. Finley, Joseph R. Kernan, Jr.,* and *Doherty, Rumble & Butler,* for Minnesota Farmers Union, amicus curiae.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a summary judgment entered in favor of plaintiff.

The facts giving rise to the cause of action are not seriously in dispute. They are taken from depositions, interrogatories, and pleadings. Merlin Hilk was engaged in farming. He purchased a personal and farm liability insurance policy from plaintiff, State Farm Mutual Automobile Insurance Company, which obligated the company to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of bodily injury, sustained by a farm employee of the insured while engaged in the employment of the insured." The policy contains an exclusion, (c)(3), which provides that the policy does not apply to bodily injury to "any farm employee employed in violation of law as to age, if the occurrence arises out of any power driven machine."

On October 20, 1970, Hilk called Dean Wohlforth and asked if he could come over that evening and help Hilk's brother with farm chores because Hilk had stepped on a large spike and could

hardly walk, Dean was unable to help that evening, but his mother offered to keep him home from school the next day so he could help Hilk. Hilk then talked with Dean's father, who agreed that Dean could work the next day.

Dean came to Hilk's farm about 7 a.m. on October 21 and after helping with the milking agreed to help all day. He was assigned to drive a tractor to the field where Hilk was picking corn, load the corn in the wagon, drive it back to the corncrib, and load the corn into the crib with a mechanical elevator. The corn elevator was run by a power shaft from a second tractor, which was stationary. The elevator consisted of a chain-driven conveyor belt with flaps to carry the corn into the crib.

Hilk stayed with Dean on the first load and pointed out how the various pieces of equipment worked and how they should be run. Dean told Hilk he had run similar elevators before and was familiar with their use. Hilk then left Dean alone and went to pick corn. Everything went smoothly until Dean was unloading the fifth or sixth load at about 3:30 p.m. He then accidentally dropped the corn fork he was using into the elevator. In order to retrieve it he jumped onto the elevator, his legs became caught in the upward movement, and in freeing himself he lost one of his legs.

At the time of the accident Dean was almost 15 years of age. He had successfully completed a 24-hour farm safety short course, offered by vocational-agricultural departments of the various high schools in the county to enable those between 14 and 16 years of age to meet the requirements of 29 CFR, § 1500.72 (1970),[1] regulating the employment in agriculture of boys and girls between the ages of 14 and 16. The sponsors of this course were encouraged to offer it by the Minnesota Department of Labor. The course generally taught the safe operation of farm equipment, but Dean did not receive specific instructions in the use of a corn elevator.

---

[1] Now 29 CFR, § 570.72 (1972).

Whether the exclusion in the insurance policy issued by plaintiff applies depends on whether Dean was employed in violation of either or both of two statutory provisions. They are almost identical. Minn. St. 181.40, which is contained in a chapter dealing largely with wages, conditions, and hours of employment, reads in relevant part:

"No person shall employ or permit any child under the age of 16 years to serve or work as an employee of such person in any of the following occupations:

"* * * [Enumerating many types of employment, all of which are industrial in nature with the exception of setting pins in a bowling alley]; *nor in any other employment or occupation dangerous to the life, limb, health or morals of such child.*" (Italics supplied.)

Section 182.09, which is taken from a chapter dealing mainly with equipment, places of employment, and regulation thereof, reads in relevant part:

"No children under the age of 16 years shall be employed at * * * [the statute here lists substantially the same occupations as are listed in § 181.40], *or any other employment dangerous to their lives or limbs or their health or morals.*" (Italics supplied.)

No specific reference is made in either statute to employment in agricultural pursuits. If the employment of Dean was in "violation of law as to age" so as to bring into play the exclusion in the insurance policy involved, it must be under the italicized portions of these statutes.

Based upon the depositions, interrogatories, and pleadings in the case, the trial court granted summary judgment in favor of plaintiff on the theory that the exclusion contained in the policy issued to Hilk barred any recovery as a matter of law because the employment of Dean came within the range prohibited by the two statutes quoted above. The appeal here is from the judgment entered pursuant to the order of the court.

Essentially two questions are involved: (1) Does Minn. St. 181.40 or 182.09 apply to agricultural employment? (2) Was Dean Wohlforth's work in loading corn into a corn elevator "employment dangerous to the life [or] limb" within the meaning of these statutes as a matter of law?

1. Hilk's contention that these statutes do not apply to agricultural employment is based primarily on the industrial nature of the specifically enumerated occupations in the two statutes. He contends that, inasmuch as the statutes contains enumerations of the types of employment that the legislature intended to include and do not mention agricultural employment, it was never the intention of the legislature to include agricultural employment in these statutes.

It is, however, clear that the legislature has not been unmindful of the application of the statutes to agricultural employment. In several provisions in both chapters reference is made to agricultural employment. Thus, § 181.16 provides that §§ 181.13 to 181.17 (relating to payment of wages) shall not apply to farm laborers; and § 181.72, which was enacted by the legislature in 1971 (L. 1971, c. 50), specifically provides that "[n]one of the provisions of Minnesota Statutes 1969, Sections 181.37, 181.38, or *181.40* shall apply to corn detasseling operations but this shall not permit the operation of machinery by minors which is now prohibited." (Italics supplied.) Similarly, § 182.21 sets specific safety standards for corn shredders; § 182.51, subd. 8, defines "employment" so as to exclude agricultural employees from coverage of L. 1969, c. 765, an act relating to occupational safety which is now coded as Minn. St. 182.50 to 182.62.

While we have never directly passed upon the applicability of §§ 181.40 and 182.09 to agricultural employment, some help may be found elsewhere. Thus, in the case of Kronvall v. Garvey, 148 Kan. 802, 84 P. 2d 858 (1938), the Kansas court considered the question of whether an act almost identical to our statutes applied to agricultural employment. In rejecting the claim that

agricultural employees were not included, the court said (148 Kan. 807, 84 P. 2d 861):

"Appellants' contention that it is inconceivable the legislature intended to deny to healthy boys and girls the right to contribute their labors on the farm is answered by the statute itself. It does not purport to do that. If, however, there is any reason why a child under sixteen years of age living on a farm is not to be prevented from engaging in an occupation dangerous or injurious to its life, limb, health or morals, in the same manner and to the same extent as one not living on a farm, it has not been made to appear, nor do we believe it was so intended."

In the case of Shaw v. Kendall, 114 Mont. 323, 136 P. 2d 748 (1943), which involved injury to a 14-year-old boy while he was tending a threshing machine, the Montana statute read much the same as ours. That court held that the enumeration of a number of types of employment which were different from farm employment eliminated farm employment under the doctrine of ejusdem generis.

In the case of Westerlund v. Kettle River Co. 137 Minn. 24, 162 N. W. 680 (1917), we rejected the application of the doctrine of ejusdem generis to the predecessor statutes involved in that case. We there said (137 Minn. 28, 162 N. W. 682):

"* * * The general purpose of a statute, as disclosed by the provisions thereof taken as a whole, often requires that the final general clause, inserted with a view of bringing within its scope matters not specifically mentioned, should not be restricted in meaning by the preceding specifications. [Citations omitted.] And, when it appears that the legislature intended to go beyond the specifications, effect must be given that intent and the statute construed accordingly. The whole purpose of the legislature in the enactment of this statute, as clearly disclosed by its numerous provisions, was the protection of boys and girls from moral or physical harm, who, by reason of immature years, presumptively are incapable of appreciating risks of injury which are

incident to the particular employments. And it is manifest that the concluding clause was inserted for the express purpose of including any employment, not embraced in those specifically mentioned, which for the same reason might expose them to like dangers. It obviously was not intended as a limitation upon the scope of the statute, but rather as an enlargement thereof, and to fully effectuate the protection intended thereby to be placed about the young and inexperienced minor child."

Our statutes are no doubt an outgrowth of the so-called "child labor laws" or "factory acts" intended to protect children from hazardous employment. The early history of the acts is sufficiently discussed in Perry v. Tozer, 90 Minn. 431, 97 N. W. 137 (1903). We can perceive of no reason why a child working on a farm under the present mechanized nature of farm employment is not as much entitled to protection from hazardous work as he would be if working in a factory, or anywhere else where dangerous machinery is used. We think children employed in agriculture are clearly included within the protection of the statutes involved.

We are not unmindful of what we said in Dahlen v. Polinsky, 195 Minn. 470, 263 N. W. 602 (1935), and Hacker v. Berkner, 263 Minn. 278, 117 N. W. 2d 13 (1962). These cases deal with provisions of the same chapter relating to safety precautions, such as lighting a stairway. In the Dahlen case we held that this provision of the statute does not apply to domestic servants and, inferentially, not to farm help. We said (195 Minn. 475, 263 N. W. 604):

"* * * It cannot even be supposed that the legislature ever intended that § 4147 [now Minn. St. 182.07] was to be construed so as to apply to domestic servants. If it did, it also must apply to farm workers. * * * From a reading of the previous legislative acts relative to the protection of employes, and in view of the ridiculous results that would obtain were [§ 4147] applicable

here, and because we are dealing with a penal statute, we are convinced that it was not intended that it should so apply."

The above was quoted with approval in Hacker v. Berkner, *supra*. That case was decided on the issue of assumption of risk by an adult. We do not think these cases are controlling here. They did not involve the provisions dealing with employment of children, and what was said about farm workers in the Dahlen case was pure dicta.

2. The second question is more difficult. There may have been a time when farm employment was, as a matter of law, not dangerous. Farming today is highly mechanized, and there may be some work on a farm that can be classified as clearly dangerous when performed by a child and other jobs that are clearly not dangerous. Such, for instance, is the detasseling of corn, which is excepted from § 181.40 by § 181.72. In between these two extremes there lies a gray area where the work may or may not be so dangerous to a child as to come within the provisions of our statutes prohibiting the employment of children. In employing a child for farm work an employer must determine whether the type of work he is to perform is dangerous "to the life, limb, health or morals of such child." The true test in making this determination, we think, is stated in Harvey v. Ruff, 164 Minn. 21, 24, 204 N. W. 634, 635 (1925), as follows:

"* * * The employment is dangerous whenever there is reasonable cause to anticipate injury to the person engaged in it whether the risk comes from the inherent character of the work or whether it comes from the manner in which the work is done."

Whether the employment falls within this test is, we think, a question of fact in many cases of the nature of this one. It could well be that operation of this corn elevator was not dangerous in itself. It is a relatively simple machine. Reasonable minds might well differ as to whether the employer had reason to anticipate that the work performed by Dean was such as to endanger the life, limb, health, or morals of the child. If reasonable

16

minds could differ, a question of fact based upon the evidence exists.

In Westerlund v. Kettle River Co. 137 Minn. 24, 29, 162 N. W. 680, 682, we said:

"* * * What constitutes a dangerous or deadly weapon, and what constitutes a 'dangerous' exhibition, will often present a question of fact to be determined before the statute can be held to have been violated."

It follows that whether Dean was employed in violation of these statutory provisions so as to render applicable the exclusion in the insurance policy involved presents a fact issue. Under these circumstances, the trial court erred in granting summary judgment.

Reversed.